Belinda Escobosa Helzer (pro hac vice)
Adrian Hernandez (pro hac vice)
Ernest Herrera (pro hac vice)
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
634 S. Spring St., 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266
bescobosa@maldef.org
ahernandez@maldef.org
eherrera@maldef.org

F. Travis Buchanan, Esq.
NV Bar No. 9371
The Cochran Firm – Las Vegas
701 E. Bridger, Suite 540
Las Vegas, NV 89101
Telephone: (702) 331-5478
Facsimile: (702) 629-6919
FtbLaw@gmail.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ALICIA INES MOYA GARAY and ARRIBA LAS VEGAS WORKER CENTER,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF LAS VEGAS, a municipality; MICHELE FREEMAN, in her official capacity as City of Las Vegas Chief of Department of Public Safety; BANANTO SMITH, in his official capacity as Deputy Chief of Detention Services; DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Action Filed: January 17, 2020 |

COMPLAINT

1

## INTRODUCTION

1. Plaintiffs ALICIA INES MOYA GARAY and ARRIBA LAS VEGAS WORKER CENTER file this civil rights litigation under the Fourth and Fourteenth Amendments to the United States Constitution, challenging Defendants' unlawful policy and practice of detaining individuals in the City of Las Vegas jail ("City Jail") beyond the time they would otherwise be released, solely based on an immigration detainer and without probable cause.

2. Freedom from imprisonment without a judicial warrant or probable cause lies at the heart of the Fourth Amendment. Yet, Defendants ignore their constitutional mandate to uphold the Constitution, choosing instead to be an uncompensated extension of Immigration and Customs Enforcement ("ICE"). For at least the last two years, Defendants have worked closely with ICE to enforce civil immigration laws against Latino and other marginalized Las Vegas residents. Defendants maintain an internal policy ("ICE Notification Procedures") and practice of informing ICE about any foreign-born person who is arrested and booked in the City Jail. As a result of this policy, ICE regularly issues immigration detainers, which are not judicial warrants and are unsupported by probable cause, requesting that Defendants continue to maintain custody of foreign-born arrestees in order to permit ICE to assume their custody. Despite the discretionary nature of these detainers, it is Defendants policy and practice to honor these requests from ICE. Defendants routinely hold individuals, including Plaintiff Moya, even if bail is posted or the underlying state criminal charges are resolved. Defendants policy subjects individuals to a new seizure, which is not supported by probable cause and therefore violates the Fourth Amendment's prohibition of unreasonable searches and seizures.

3. Las Vegas is one of the most diverse cities in the state with one of the highest per capita immigrant population in the country. Local families are put at risk every day due to Defendants collusion with ICE. Defendants' policy and practice not only violates individuals' rights, it also undermines community safety and wastes local public safety resources.

//

2

COMPLAINT

## JURISDICTION AND VENUE

4.     This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 and under 42 U.S.C. § 1983 over Plaintiffs' claims under federal law and the Constitution of the United States. This Court has supplemental jurisdiction over Plaintiffs' common and state law claims under 28 U.S.C. § 1367. Venue is proper in this District under 28 U.S.C. § 1391(b)(2).

## PARTIES

5.     Plaintiff Alicia Ines Moya Garay ("Plaintiff Moya" or "Ms. Moya") is a resident of Las Vegas, Nevada. She came to the United States when she was an infant. She is married to a U.S. citizen and is the mother of two U.S.-citizen children. Ms. Moya has lived in the United States her entire life. She is the primary wage earner for her family.

6.     Plaintiff Arriba Las Vegas Worker Center is a grassroots organization that unites day laborers, domestic workers, and other low-wage and migrant workers to defend their rights, fight for dignity, and win justice for all. Its mission is to develop, educate, and empower worker and migrant communities to take action to defend their rights as workers and migrants.

7.     Defendant City of Las Vegas ("City") is a municipal entity with the capacity to sue and be sued. It is a Charter City under the laws of the State of Nevada. Employees of the City have engaged in the acts complained of herein pursuant to City policies, practices, and customs.

8.     Defendant Michele Freeman is the Chief of the Department of Public Safety ("DPS"), a department of the City. DPS provides the public with law enforcement and detention services, manages the City Jail and includes the deputy city marshals who provide public safety at city parks and facilities. Plaintiffs are informed and believe Defendant Freeman oversees and is responsible for the operation and management of DPS. Defendant Freeman is sued in her official capacity.

9.     Defendant Bananto Smith is the Deputy Chief of Detention Services for DPS. Plaintiffs are informed and believe Defendant Smith oversees and is responsible for the operation and management of the City Jail. Defendant Smith is sued in his official capacity.

COMPLAINT

10. Plaintiffs are unaware of the names of Defendants identified here as DOES 1 through 25, inclusive, and therefore sues them by those fictitious names. Plaintiffs are informed and believe, and therefore allege, that Defendants sued here as DOES are responsible in some manner for the practices, acts, conduct, and occurrences alleged here, as either actual perpetrators or co-conspirators, aiders and abettors, officers, directors, and/or managing agents with the knowledge control, authority, direction, and/or ratification of the other Defendants, and each of them. Plaintiffs will seek leave of Court to amend this Complaint to allege the true names and capacities of the DOE Defendants, and the roles they played, once their identities and/or manner of participation in the wrongful conduct here described is ascertained.

## FACTUAL ALLEGATIONS

### A. Immigration Detainers

11. An immigration detainer, also known as an ICE hold or ICE detainer, is a request that a local enforcement agency (LEA) continue to detain an individual for 48 hours, excluding weekends and holidays, beyond the time when he or she would otherwise be released from criminal custody, to provide ICE extra time to assume physical custody of the person and investigate his or her immigration status.

12. Immigration detainers are not warrants or court orders, and they are not issued or approved by judicial officers. They are unsworn documents that may be issued by a wide variety of immigration officers.

13. An immigration detainer is discretionary. The federal regulation governing such detainers, 8 C.F.R. § 287.7, does not mandate detention by LEAs, but only requests compliance in detaining suspected undocumented immigrants.

14. Immigration detainers purport to authorize multiple days of incarceration unrelated to the initial criminal custody, thereby effectively requesting LEAs engage in a new seizure of the individual. To lawfully subject the individual to a new seizure LEAs must have probable cause -- independent of the initial finding of probable cause for violating state law -- to believe that the individual has committed or was committing a criminal offense.

15. Mere unauthorized presence in the United States is neither a criminal matter nor gives rise to an inference that an individual is engaged in criminal activity. Indeed, deportation and removal proceedings are purely civil actions to determine an individual's eligibility to remain in the country. Therefore, an immigration detainer alone is not sufficient to establish probable cause of criminal activity to justify continued detention.

### B. Defendants' Policy and Practice

16. Since at least 2017, Defendants have worked closely with ICE and consistently participated in immigration enforcement activities, including notifying ICE of individuals in City custody and their release dates, as well as holding people on immigration detainers beyond the time or authority permitted under state law.

17. When an individual is taken into Defendants' custody, Plaintiffs are informed and believe that City personnel ask those individuals who look "foreign" (generally people of color) where they were born. If the individual states that he or she was born outside of the United States, Defendants inform ICE that the individual is in their custody. Defendants maintain an internal policy ("ICE Notification Procedures") of informing ICE about any foreign-born person who is arrested and booked. Plaintiffs are also informed and believe that an ICE officer who works in the City Jail interviews identified individuals regarding his or her immigration status.

18. ICE may then issue an immigration detainer. If Defendants receive an immigration detainer for an individual in their custody, Defendants' written policy states that they will detain a person for up to 48 hours beyond the time when he or she would have otherwise been released from custody.

19. Over a 26-month period, ICE picked up more than 1,000 people from Defendants' custody. From January 1, 2017, to February 28, 2019, Defendants provided ICE with information resulting in detainers for 1,680 people. Of those, ICE picked up 1,139 – or 67.8 percent – of them. Additionally, Defendants transferred 58 percent of people to ICE before their cases were closed by a local judge. Further, Defendants detained individuals in the City Jail past their scheduled date of release, pending transfer to ICE, for an average of 1.17 days. While some

individuals were picked up before their scheduled release date, others were held for up to five days.

### C. Plaintiff Alicia Ines Moya Garay ("Plaintiff Moya")

20. On or about July 17, 2018, at around 7 a.m., Plaintiff Moya was pulled over by the Nevada Highway Patrol for allegedly running a red light and arrested on a bench warrant for unpaid tickets. Plaintiff Moya was taken to Defendants' City Jail. She called her sister to let her know that she was being taken to City Jail.

21. Upon her arrival at City Jail, Plaintiff Moya was asked by City personnel something to the effect of, "Where are you from?" Plaintiff Moya answered that she was born in Mexico. Plaintiff Moya was not informed that this casual conversation with Defendants' staff was related to immigration enforcement or Defendants' policy and practice of collaborating with ICE.

22. Shortly thereafter, Plaintiff Moya was briefly questioned by an ICE agent who asked her whether she was a U.S. citizen or lawful permanent resident. Plaintiff Moya responded that she was neither. The ICE agent did not ask Plaintiff Moya whether she had any other status or authorization. The interview lasted about 2-3 minutes.

23. Although there were other women who were being processed at the same time, Plaintiff Moya only saw the ICE officer speak to the only other Latina arrestee.

24. After being booked and processed, Plaintiff Moya was taken to her cell at approximately 1 p.m. that day. Before she went to her cell she was able to speak to her sister, who informed her that they were trying to post bail.

25. On July 17, after Plaintiff Moya called, her sister immediately went to the City Jail to post bail, which was set at $2,700. Plaintiffs are informed and believe that because the City Jail generally detains those with alleged misdemeanors, bail is typically set without a formal bail hearing. Bail is generally set at the time of booking according to a bail schedule.

26. At around 9 a.m., the City Jail clerk informed Plaintiff Moya's sister that Plaintiff was subject to a hold, and that posting bail would not result in her sister's release. It was not until later that Plaintiff Moya and her family learned that she was subject to an ICE detainer.

27. Although Plaintiff Moya was entitled to bail, Defendants would not allow Plaintiff Moya to post bail. She remained in the City Jail for two to three days before she went before a judge. In hopes of getting back to her family as soon as possible, Plaintiff Moya pled guilty to the traffic charges. She was sentenced to ten days in City Jail, with three days for time served, and was ordered to be released on July 25, 2018.

28. Despite being scheduled for release at 6:15 a.m. on July 25, Defendants did not release Plaintiff. By 8 p.m. on the evening of July 25, Plaintiff, who remained in her cell, asked Defendants' personnel why she wasn't being released. A female officer told her that she would not be "released to the streets."

29. Plaintiff Moya was held by Defendants for approximately 24 hours after her ordered scheduled release. On the morning of July 26, 2018, ICE officers came to the City Jail, shackled her, and transported her to ICE detention in Henderson, Nevada. This is the first time Plaintiff Moya discovered that she was being held because of ICE. She was in ICE custody from then until August 17, 2019, when she was released on $2000 bond.

30. Any injury that Plaintiff Moya suffered was the direct result of Defendants' policy, practice, and custom of holding her beyond the date of she was eligible or released based solely on the ICE detainer.

31. Defendants violated Plaintiff Moya's constitutional and statutory rights both by refusing to release her when she could have posted bail and by continuing to incarcerate her beyond her release date as ordered by the court.

### D. Plaintiff Arriba Las Vegas Worker Center

32. Plaintiff Arriba's mission is to develop, educate, and empower worker and migrant communities to take action to defend their rights as workers and migrants. In furtherance of their mission Arriba: (1) provides training on workplace health and safety and supports workers to

7

COMPLAINT

report violations and address hazards at work, as well as support workers to advocate for safe and healthy working conditions and access to personal protective equipment on the job; (2) assists workers in addressing issues related to wage theft by unscrupulous employers/contractors; (3) and supports Temporary Protected Status ("TPS") holders in Nevada build a movement for permanent residency for all TPS families.

33.  As a grassroots organization that unites low-wage and migrant workers and empowers them to take action to defend their rights, regardless of their citizenship status, Arriba relies on active involvement from workers and other allies within community. Defendants' unlawful policy and practice has sowed local distrust of local law enforcement, created uncertainty and fear among Arriba's membership, and frustrated Arriba's mission of empowering low-wage and migrant workers to advocate for their rights.

34.  Additionally, in the last few years, Arriba has also had to divert its resources, including staff time, to address ICE detainers in Las Vegas' city and county jails. On January 30, 2019 and December 16, 2019, Arriba filed public record requests to learn more about Defendants' role in collaborating with ICE and has been tracking and analyzing the information received from the City.

35.  Arriba also directly supports individuals and their families who have been victim to such local police/ICE collaboration. In this capacity, Arriba has had to divert its resources towards education, training, and bond funds in order to counteract the increased cooperation between Defendants and ICE.

### E. Defendants Continue to Honor Immigration Detainers

36.  On September 27, 2019, the Central District for California ruled that ICE is enjoined from (1) issuing detainers to state and local law enforcement agencies in states where there is no explicit state statute authorizing civil immigration arrests on detainers and (2) issuing detainers based on probable cause, when the investigation of immigration status and removability consists of only a database search. *Gonzalez v. Immigration and Customs Enforcement*, No. 2:12-cv-09012-AB (FFMx), 2019 WL 4734579 (C.D. Cal. Sept. 27, 2019).

37. Nevada does not have a statute authorizing an arrest for civil immigration violations. In response to this decision, on October 23, 2019, the Las Vegas Metropolitan Police Department ("LVMPD), which is run by the Clark County Sheriff's Department announced it "would no longer honor federal immigration detainers for civil immigration violations," adding that "[t]his decision would also affect LVMPD's jail-based Memorandum of Agreement with ICE (287(g))," a contract between LVMPD and ICE which allowed some LVMPD officers to enforce federal immigration laws in LVMPD detention facilities.

38. On October 24, 2019, the City of Las Vegas made an announcement on their official Twitter page stating: "Our City Attorney has determined that we will also suspend our 287(g) agreement with ICE and will not detain inmates on federal immigration holds due to a California court ruling. We'd like to remind the public that our city jail is for misdemeanors only."

39. Despite this announcement, Defendant City never entered into a formal 287(g) agreement with ICE. In fact, Plaintiffs are informed and believe that the City explicitly declined to enter into such an agreement with ICE.

40. Outside of a single social media post, Defendant City has neither issued a formal announcement nor initiated an official suspension of its policy, practice and custom of collaborating with ICE and honoring ICE detainers beyond the time an individual would otherwise be released for their underlying state violation.

41. Plaintiffs are informed and believe that Defendants have continued to honor ICE detainers despite Defendant City's twitter announcement.

42. According to data provided by Defendants in response to a recent Nevada Public Records request, ICE holds have been issued against twenty-four people in Defendants' custody between October 24, 2019 and December 15, 2019. At least five of these individuals have been subjected to unlawful prolonged detention in City Jail after being held passed their scheduled release date and ultimately released to ICE custody.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

COMPLAINT

**Fourth Amendment Violation (Unlawful Seizure); 42 U.S.C. § 1983**

43. Plaintiffs incorporate all the allegations of the preceding and subsequent paragraphs as if fully set forth herein.

44. At all relevant times, Defendants acted under color of state law.

45. Defendants policy, practice, custom, and actions deprived Plaintiff of her Fourth Amendment rights under the United States Constitution.

46. The Fourth Amendment provides "[t]he right of the people to be secure in their persons" and protects against "unreasonable searches and seizures" without a warrant and without probable cause. U.S. Const. Amend. IV.

47. Defendants intentionally violated Plaintiff Moya's right to be free from unreasonable seizures without probable cause, by refusing to allow Plaintiff to post bail for which she was eligible.

48. As set forth above, Defendants continued to detain Plaintiffs after the expiration of any and all state law basis to detain them, including after they could have secured their release on bond and/or after the resolution of their state charges, solely on the basis of ICE detainers and without probable cause to believe that Plaintiffs were removable, thus seizing Plaintiffs in violation of the Fourth Amendment.

49. Plaintiff suffered damages, including emotional distress and economic losses, in an amount to be determined at trial, and as a proximate result of Defendants' conduct.

**SECOND CAUSE OF ACTION**

**Fourteenth Amendment Violation (Due Process); 42 U.S.C. § 1983**

50. Plaintiff incorporates all of the allegations contained in the previous paragraphs of this complaint as though fully set forth here.

51. The Eight Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed[.]" While the Excessive Bail Clause of the Eighth Amendment "does not bar the state from detaining arrestees without bail, or from considering interests other than flight prevention in setting bail," it does "prevent[ ] the imposition of bail conditions that are excessive

in light of the valid interests the state seeks to protect by offering bail." *Galen v. Cty. of Los Angeles*, 477 F.3d 652, 660 (9th Cir. 2007) (citing *U.S. v. Salerno*, 481 U.S. 739, 754 (1987)).

52. Furthermore, while an accused does not have an absolute right to bail, she does have "a Fourteenth Amendment due process right to have a state's bail system administered without caprice or discrimination." *Kelly v. Springett*, 527 F.2d 1090, 1093 (9th Cir. 1975)).

53. Under Nevada law, a person arrested for an offense other than murder of the first degree must be admitted to bail. Nev. Rev. Stat. § 178.484. The state court is bestowed with the discretionary power to set bail within statutory and constitutional limits. *See id.*; *see also Bergna v. State*, 102 P.3d 549, 551 (Nev. 2004).

54. Defendants practice of refusing to accept bail from Plaintiffs and those like her, who were willing and able to pay the bail amount and could have secured their freedom but-for Defendants' unlawful practice, solely on the basis of immigration detainers filed against them, violated Plaintiffs right to have a state's bail system administered without caprice or discrimination.

55. Plaintiffs suffered damages, including, but not limited to, emotional distress and economic losses, in an amount to be determined at trial, and as a proximate result of Defendant's conduct.

### THIRD CAUSE OF ACTION

#### False Imprisonment in Violation of Nevada Law

56. Plaintiff incorporates all of the allegations contained in the previous paragraphs of this complaint as though fully set forth here.

57. Under Nevada law, false imprisonment is an unlawful violation of the personal liberty of another, and consists in confinement or detention without sufficient legal authority.

58. Defendants are responsible for the conduct of their employees under the doctrine of *respondeat superior*.

59. Defendants intentionally instigated or participated in the false imprisonment of Plaintiff Moya, in violation of Nevada law, by detaining her in Defendants' custody beyond the

time or authority permitted under state law, without probable cause and in violation of the Fourth Amendment.

60. Plaintiff Moya suffered damages, including, but not limited to, economic losses, humiliation, fear, and emotional distress, in an amount to be determined at trial, and as a proximate result of Defendants' conduct. Plaintiff is entitled to compensation for physical discomfort or inconvenience, and for any resulting physical illness or injury to health.

## JURY TRIAL

61. Plaintiff hereby requests a jury trial.

## PRAYER FOR RELIEF

62. WHEREFORE, Plaintiffs pray that this Court award:

a. A declaratory judgment that Defendants' policy, practice, and/or custom of detaining arrestees in the City Jail solely on the basis of an immigration detainer and beyond the time or authority permitted under state law, violates the United States Constitution and state law;

b. A preliminary and permanent injunction restraining Defendants, their representatives, successors, assigns, officers, agents, servants, employees, and all other persons acting or claiming to act or, on behalf of, or in active concert or participation with Defendants, from continuing or engaging in the unlawful conduct complained of herein;

c. Monetary damages in an amount to be proven at trial;

d. Costs and attorneys' fees against Defendants as to the causes of action alleged under the Constitution and laws of the United States, pursuant to 42 U.S.C. § 1988;

e. All remedies provided by 42 U.S.C. § 1983; and

f. Such other relief as this Court may deem just and proper.

Dated: January 17, 2020

/s/ F. Travis Buchanan
F. Travis Buchanan, Esq.
NV Bar No. 9371
The Cochran Firm – Las Vegas

*Attorneys for Plaintiffs*

12

COMPLAINT