BRYAN K. SCOTT
City Attorney
Nevada Bar No. 4381
By: JEFFREY L. GALLIHER
Deputy City Attorney
Nevada Bar No. 8078
495 South Main Street, Sixth Floor
Las Vegas, NV 89101
(702) 229-6629
(702) 386-1749 (fax)
Email: jgalliher@lasvegasnevada.gov
Attorneys for City of Las Vegas,
Michele Freeman, Bananto Smith

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ALICIA INES MOYA GARAY, JUAN JAIME LOPEZ-JIMENEZ, and ARRIBA LAS VEGAS WORKER CENTER, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF LAS VEGAS, a municipality; MICHELE FREEMAN, in her official capacity as City of Las Vegas Chief of Department of Public Safety; BANANTO SMITH, in his official capacity as Deputy Chief of Detention Services; DOES 1 through 25, inclusive, <br><br> Defendants. | CASE NO. 2:20-cv-0119-GMN-EJY <br><br> **DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT** |

Defendants City of Las Vegas, Michele Freeman and Bananto Smith, (hereinafter collectively referred to as "City Defendants") by and through their attorneys of record, Bryan K. Scott, City Attorney, and Jeffrey L. Galliher, Deputy City Attorney and hereby requests that this Court grant summary judgment in favor of the City Defendants as there are not genuine issues of material fact for trial.

This Counter-Motion is made and based on FRCP 56 and LR 56-1, the following Memorandum of Points and Authorities, the pleadings and papers on file herein, and any argument presented at the time of the hearing on this matter, if any.

1

## TABLE OF CONTENTS

2    I.    INTRODUCTION AND RELEVANT FACTS……………....………………………1

3    II.   SUMMARY JUDGMENT STANDARD…………………………………………2

4    III.  ARGUMENT…………………….…………………………………………...3

5         A.  ICE WAS AN INDESPENSIBLE PARTY……...…...………………………...3

6
         B.  THE DETENTIONS BY LVDPS AND ICE WERE TWO SEPARATE
7             DETENTIONS……………………………………………………….……..8

8         C.  LVDPS' CONDUCT COMPLIED WITH THE LIMITATIONS OF *GERSTEIN*
9             *V. PUGH*…………………………………………………………………9

10        D.  LVDPS' CONDUCT WAS REASONABLE UNDER THE CIRCUMSTANCES
             OF THIS CASE…………………………………………………………11
11
12        E.  LVDPS DID NOT FALSELY IMPRISON THE PLAINTIFFS…...…………...15

13        F.  PLAINTIFFS WERE NOT DENIED BAIL……………………………………16

14        G.  PLAINTIFFS WERE NOT DENIED DUE PROCESS BY LVDPS…………...17

15        H.  ARRIBA LAS VEGAS WORKER CENTER HAS NO STANDING………….19

16
     IV.   CONCLUSION………………………………………………………………23
17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

Cases                                                                                          Page Number

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986)……………………………………....3

*Austin v. Hamilton,* 945 F2d 1155, 1158-60 (10th Cir 1991)……………………………………...8

*Barrows v. Jackson,* 346 U.S. 249, 73 S. Ct. 1031 (1953)…………………………………………20

*Brinegar v. United States,* 338 U.S., at 174-175……………………………………………………10

*Brittain v. Hansen,* 451 F3d 982, 996. (9th Cir. 2006)……………………………………………...13

*Celotex Corporation v. Catrett,* 477 U.S. 317, 325 (1986)…………………………………………3

*County of Riverside v. McLaughlin,* 500 U.S. 44, 56-57 (1991)………………………9,10,11,14

*County of Sacramento v. Lewis,* 523 US 833, 846 (1998)……………………………………………12

*Craig v. Boren,* 429 U.S. 190, 195, 97 S. Ct. 451, 456 (1976)…………………………………………20

*Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.,* 276 F.3d 1150, 1155 (9th Cir. 2002)………………………………………………………………………………………………4

*Eisenstadt v. Baird,* 405 U.S. 438, 446, 92 S. Ct. 1029, 1034 (1972)…………………………..20

*Gerstein v. Pugh,* 420 U.S. 103, 105 (1975)…………………………………………………...9,11

*Gonzalez v. U.S. Immigration & Customs Enf't,* 975 F.3d 788, 817-18 (9th Cir. 2020)……..12,13

*Havens Realty Corp. v. Coleman,* 455 U.S. 363, 102 S. Ct. 1114 (1982)………………………22

*Hernandez v. City of Reno,* 97 Nev. 429, 433 (Nev. 1981)…………………………………….15,16

*Kellogg v. State,* 94 Wn. 2d 851, 855 (Wash. 1980)…………………………………………….16

*Makah Indian Tribe v. Verity,* 910 F.2d 555, 558 (9th Cir.1990)……………………………….3,4

*Miranda-Olivares v. Clackamas Cnty.,* No. 3:12-cv-02317-ST, at 16 (D. Or. Apr. 11, 2014)...…8

*Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson,* 357 U.S. 449, 78 S. Ct. 1163 (1958)………………………………………………………………………...………..23

*Nitco Holding Corp. v. Boujikian,* 491 F3d 1086, 1089 (9th Cir 2007)…………………………12

*Northrop Corp. v. McDonnell Douglas Corp.,* 705 F.2d 1030, 1043 (9th Cir.1983)……………4

*Patel v. Penman,* 103 F3d 868, 874 (9th Cir 1996)……………………………………………..12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 45 S. Ct. 571 (1925)…………………………………………………………………………………………20

*Powers v. Ohio*, 499 U.S. 400, 111 S. Ct. 1364 (1991)……………………………………20

*Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968)…………………..6,7

*Rivas v. Martin*, 781 F. Supp. 2d 775, 782 (N.D. Ind. 2011)…………………………………17,18

*Saucier v. Katz,* 533 US 194 (2001)………………………………………………………..12

*Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956, 104 S. Ct. 2839, 2846 (1984)………………………………………………………………………………………20,22

*Singleton v. Wulff*, 428 U.S. 106, 118, 96 S. Ct. 2868, 2876 (1976)……………………………20

*Sylvia Landfield Trust v. City of L.A.,* 729 F3d 1189, 1195 (9th Cir 2013)………………………12

*United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 554-58, 116 S. Ct. 1529, 1535-37 (1996)……………………………………………………………..19

*Village of Euclid v. Ambler Realty Co.,* 272 US 365, 395 (1926)…………………………………12

*Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 634, 100 S. Ct. 826, 834 (1980)....22

*Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 2205 (1975)…………………………………19

Rules

FRCP 12………………………………………………………………………………………3

FRCP 12(b) (7)………………………………………………………………………………3

FRCP 19………………………………………………………………………………………3

FRCP 19(a)……………………………………………………………………………………4

FRCP 19(a)(1)…………………………………………………………………………………4

FRCP 19(a)(1)(A)……………………………………………………………………………3

FRCP 19(a)(1)(B)……………………………………………………………………………4,5

FRCP 56(a)……………………………………………………………………………………2

42 U.S.C. Section 1983………………………………………………………………………6

# I.

## INTRODUCTION AND RELEVANT FACTS

The facts in this case are not really in dispute.  This case arises from the detention and subsequent transfer to the custody of ICE of Plaintiffs Garay and Lopez.  Ms. Garay and Mr. Lopez were arrested in separate incidents subsequent to traffic stops made by the Nevada Highway Patrol and Las Vegas Metropolitan Police, respectively.  During those traffic stops it was determined that an arrest warrant had been issued by the City of North Las Vegas for Mr. Lopez and by the City of Las Vegas for Ms. Garay, based upon failures to appear in court.  Ms. Garay was transported to and booked into the City of Las Vegas Detention Facility (CLVDF) on July 17, 2018.  Mr. Lopez was transported and booked into the CLVDF on April 20, 2018.  The statement of facts contained within the Plaintiffs' Motion for Summary Judgment are essentially uncontested with respect to material issues.

While being processed both provided information that they were not born in the U.S.  Per the policy at the time the CLVDF informed ICE that they were in custody.  ICE subsequently issued a form I-247A Immigration Detainer for both Ms. Garay and Mr. Lopez requesting that they be held for not more than 48 hours once their City case was resolved and they would otherwise be released from custody.  In both cases they were held and were taken into custody by ICE officers at the CLVDF within 24 hours of clearing the City charges.

During her intake Ms. Garay was interviewed by an individual who she understood to be an ICE officer.  They discussed her place of birth, her citizenship status, residence, etc.  Attached as **Exhibit A** is a copy of the deposition transcript of Alicia Ines Moya-Garay.  *See,* Exhibit A, Pg. 42, ln. 14-21

During the intake procedure at CLVDF Mr. Lopez revealed that he was born in Mexico.  Attached as **Exhibit B** is a copy of the deposition transcript of Juan Jaime Lopez-Jimenez.  *See*, Exhibit B, Pg. 44, ln. 17-22   Mr. Lopez was held at the CLVDF for approximately 5 days. *See*, Exhibit B, Pg. 48, ln. 9   At that time Mr. Lopez had been in the United States for 29 years.  *See*, Exhibit B, Pg. 56, ln. 13-16   He knew that his immigration status in the U.S. was not legal. *See*, Exhibit B, Pg. 56, ln. 9

Per its policy at the time the CLVDF reported Mr. Lopez's name to ICE based upon the information provided by him that he was born in Mexico.  In response, ICE issued a form I-247A Immigration Detainer.

Subsequently, Ms. Garay and Mr. Lopez were released from the CLVDF and immediately taken into custody by ICE, (the "Second Detention").

While the facts are clear, Plaintiffs' contention that "LVDPS never ended the policy of detaining individuals on ICE detainers" is not entirely accurate.  There is no doubt that since October of 2019 the LVDPS no longer holds individuals beyond the time they would otherwise be released.  While it is true that LVDPS still advises ICE when a foreign born inmate is booked, if ICE doesn't arrive at the CLVDF to take custody of the individual before the time they would otherwise be released on their City charges, the individual is released to the streets.  Cetulio Pg. 66, ln.23 – Pg. 67, ln. 3  Jacks Pg. 66, ln. 8-12

Nevertheless, Plaintiffs are not entitled to summary judgment because material issues of fact exist as to what transpired in the hours AFTER Plaintiffs were taken into custody by ICE. Because Plaintiffs elected to not sue ICE in this case and neither Plaintiff has a clear understanding of what transpired during their processing by ICE in the hours after being taken into ICE custody, Plaintiffs cannot establish that, for example, ICE did not obtain a probable cause determination after taking Plaintiffs into custody.  Contrarily, The City is entitled to summary judgment because no disputed material issue of fact exists with regard to whether Plaintiffs remained in the custody of LVDPS on the Second Detention for more than 48 hours.

## II.

## SUMMARY JUDGMENT STANDARD

FRCP 56(a) provides that summary judgment shall be granted if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. "By its very terms [the summary judgment standard] provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion

2

for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). [T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. *Id.*

One of the principal summary judgment purposes is to dispose of factually unsupported claims or defenses at an early state of litigation.  The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the nonmoving party's case.  *Celotex Corporation v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party meets the requirements of Rule 56 by showing that no genuine issue of material fact remains, or there is an absence of evidence to support the nonmoving party's case, the party resisting the motion "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.  Only issues of material fact will defeat a motion for summary judgment.

### III.

### ARGUMENT

### A.  ICE WAS AN INDESPENSIBLE PARTY

FRCP 12(b) (7) provides for dismissal of any claim for relief, for "failure to join a party under Rule 19."  FRCP 19(a)(1)(A) provides that a person or entity is a "required party" and "must be joined" if feasible, if "in that [party]'s absence, the court cannot accord complete relief among existing parties." A party can seek dismissal for failing to join a required party, via a motion under FRCP 12. It also can file a motion under FRCP 19 to require joinder of the required party. *See, Makah Indian Tribe v. Verity,* 910 F.2d 555, 558 (9th Cir.1990). If the court cannot accord complete relief among existing parties, then dismissal with leave to amend, or joinder, is mandated under FRCP 12 and 19.

As part of the evaluation, Rule 19 also requires a determination of (i) whether the required party is subject to service of process, and (ii) whether joinder will not deprive the court of subject-matter jurisdiction. Here, required party ICE is subject to service of process, and the federal question jurisdiction asserted by Plaintiffs will not be affected by the addition of ICE as a defendant. In fact, bringing ICE into this litigation is required to provide complete relief to the parties. A Rule 19 "inquiry is a practical, fact-specific one, designed to avoid the harsh results of rigid application." *Makah Indian Tribe v. Verity*, supra., at 558:

> To determine whether a party is 'indispensable' under Fed.R.Civ.P. 19, a court must undertake a two-part analysis: it must first determine if an absent party is 'necessary' to the suit; then if, as here, the party cannot be joined, the court must determine whether the party is 'indispensable' so that in 'equity and good conscience' the suit should be dismissed. The inquiry is a practical one and fact specific…and is designed to avoid the harsh results of rigid application [footnote and citations omitted].

Under Rule 19(a), adding a party may be required in either of two situations. *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1155 (9th Cir. 2002). First, under Rule 19(a) (1), a party is deemed required if complete relief cannot be granted in its absence. "This factor is concerned with consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the same cause of action." *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir.1983). In conducting the Rule 19(a)(1) analysis, the court asks whether the absence of the party would preclude the district court from fashioning complete relief as between the parties. *Id.*

Second, under Rule 19(a)(1)(B), a person is deemed required if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the[1] person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or

---

[1] Rule 19(a) provides: "Persons Required to Be Joined if Feasible. (1) A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if (A) in that person's absence, the court cannot accord complete relief among existing parties, or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. (2) Joinder by Court Order. If the person has not been joined as required, the court must order that the person be made a party."

otherwise inconsistent obligations because of the interest."

Here, complete relief cannot be accorded to the parties in ICE's absence for these reasons:

1. Plaintiffs' Complaint is based upon LVDPS's policy of honoring ICE detainers claiming that such "detainers are not warrants or court orders, and they are not issued or approved by judicial officers. They are unsworn documents that may be issued by a wide variety of immigration officers."

2. Plaintiffs' Complaint is a challenge to the operations of ICE itself, including its procedures and authorization for issuing ICE detainers.

3. Plaintiffs' Complaint is replete with allegations relating to ICE and its actions. Presumably, Plaintiffs have determined that each of these allegations must be proven, in order for Plaintiffs to obtain the relief they seek. These ICE-related allegations are essential to Plaintiffs' proof, in order to attach liability to the named Defendants, and ICE is party to those ICE-related allegations, making it a required party. For example, these paragraph headings and pleadings from the Complaint show the importance of ICE's role in Plaintiffs' Complaint:

> LVDPS's COR-5962 "Foreign National" Policy.
> LVDPS's Practices in Relation to ICE Detainers Under the "Foreign National" Policy.
> LVDPS Never Ended the Policy of Detaining Individuals on ICE Detainers.

4. Plaintiffs rely extensively on the acts of ICE as essential facts alleged in their Complaint, and any decisions based on these facts require that ICE be held accountable for its role (assuming Plaintiffs can meet their burdens of proof on each of their alleged facts and legal theories of liability).

5. Without ICE as a party, any successful challenge to the use of ICE detainers would only apply to LVDPS but not to any other agencies that may also honor ICE detainers or otherwise provide services to ICE in that regard. For example, the Complaint alleges at Paragraph 29 that Plaintiff Garay was transferred to Henderson, Nevada. For Plaintiff to obtain complete relief for the alleged unlawful detentions under ICE detainers or other ICE authority, then ICE must be made a party and subject to any final determinations of this court, in any locale where it seeks to detain

people.

6.  Without ICE as a party, Plaintiffs cannot obtain complete relief under their First Cause of Action (Fourth Amendment Violation (Unlawful Seizure); 42 U.S.C. Section 1983), or their Second Cause of Action (Fourteenth Amendment Violation (Due Process); 42 U.S.C. Section 1983). These claims rely on Plaintiffs having been detained "solely on the basis of ICE detainers and without probable cause to believe that plaintiffs were removable."  In addition, Plaintiffs allege that ICE detainers "are not Warrants or court orders, and they are not issued or approved by judicial officers."

Therefore, to prevail on their claims, Plaintiffs must prove these allegations, but any such proof would not be binding on a non-party, so ICE could continue its policy of issuing detainers for persons, even if the court agreed with Plaintiffs on this claim.  Without ICE as a party, Plaintiffs cannot obtain complete relief under their Third Cause of Action (False Imprisonment), in that Plaintiffs rely on all previous allegations, which necessarily include the same shortcomings: even if the ICE-holds policy and detentions somehow constitute a "false" imprisonment, any relief would be limited to named defendants and ICE would not be affected for its holds policy and detentions in, say, Nye County, Henderson or in any other jurisdiction.

7. Plaintiffs' Complaint is replete with references to ICE and its policies and procedures. The events were undertaken by LVDPS pursuant to the detainers issued by ICE.  Any decision in this case against the current Defendants necessarily implicates ICE's interests and duties under federal law. ICE clearly has an interest in the outcome of this case under Rule 19(a)(1)(B). Its interests cannot be protected in its absence. And the current Defendants are at substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of ICE's interest.

In *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968), the Supreme Court identified four interests that are relevant to these issues of joinder under Rule 19:

(1) the interest of the plaintiff in having a forum;
(2) a defendant's desire to avoid multiple litigations, or inconsistent relief, or sole responsibility for a liability it shares with another;
(3) the interest of the absentee whom it would have been desirable to join; and
(4) the interests of the courts and the public in complete, consistent, and efficient settlement of controversies. *Id*. at 738-39.

Here, the factors of *Provident Tradesmens Bank & Trust Co*. lean heavily toward ICE being a required party:

1. Adding ICE would not jeopardize the forum selected by Plaintiff, as ICE can be served and participate in this litigation in this court, without a significant risk of a successful change-of-venue request.

2. In ICE's absence, should Plaintiff receive a favorable ruling, the CLV Defendants (i) may face multiple litigation from other detainees under ICE holds, (ii) may be treated differently from cases in other jurisdictions where ICE is a party and successfully defeats challenges to its holds and detention policy, and (iii) may be solely responsible for any judgment in favor of Plaintiff. CLV Defendants would be unfairly left "holding the bag," in the event Plaintiffs receive a favorable ruling, in ICE's absence. That may or may not result in further litigation, the necessity of which would be obviated if ICE and its interests can be adjudicated in this case.

3. ICE has an interest in this litigation, as it concerns several of its standard operating procedures and rights to continue them, including, without limitation, ICE holds and detention policies in jurisdictions throughout the country. Should Plaintiffs receive a favorable ruling, other arrangements with other law enforcement agencies may be affected, with the possibility of inconsistent results in other jurisdictions, and with the possibility that such cooperation may cease by judicial decision, without the benefits that such agreements have provided under Congressional authorization.

4. If ICE is not added, re-litigating the same or similar issues, as mentioned above, may arise in Nevada and other states where ICE has similar arrangements with local LEAs, risking inconsistent determinations and expending additional judicial resources. In short, an "efficient settlement of controversies" in this case cannot be achieved in ICE's absence.

The other factors under Rule 19 are also satisfied with ICE added as a party.

Rule 19 also requires a determination of (i) whether the required party is subject to service of process, and (ii) whether joinder will deprive the court of subject-matter jurisdiction. If the required party is not subject to service of process, or if joinder would deprive the court of subject-matter jurisdiction, then adding a required party would not be mandatory. Here,

however, neither of those impediments exist: ICE is subject to service of process, and the court retains subject-matter jurisdiction of Plaintiffs' four asserted claims for relief.

### B. THE DETENTIONS BY LVDPS AND ICE WERE TWO SEPARATE DETENTIONS

Plaintiffs' case is doomed by their own contentions. Specifically, Plaintiffs admit that "[a]fter an inmate is due for release on all criminal matters, incarceration on an immigration detainer is a new seizure to which Fourth Amendment rights unquestionably apply." *See,* Plaintiffs' Motion for Summary Judgment Pg. 13, ln. 26 – Pg. 14, ln. 1. They must further acknowledge then that the Second Detention began where the first detention ended: at the time that the individual would have been otherwise released from LVDPS custody.

Indeed, courts like this one have found that seizures by ICE pursuant to an Immigration Detainer are "not a continuation of [the] initial arrest, but new seizures independent of the initial finding of probable cause for violating state law." *Miranda-Olivares v. Clackamas Cnty.*, No. 3:12-cv-02317-ST, at 16 (D. Or. Apr. 11, 2014). "The custodial continuum run[s] through initial arrest or seizure, post-arrest but pre-charge or pre-hearing custody, pretrial detention, and post-conviction incarceration." *Austin v. Hamilton,* 945 F2d 1155, 1158-60 (10th Cir 1991). Since the ICE detainment is clearly a "new seizure" it requires its own probable cause determination. "[T]he Fourth Amendment applies to [Defendants] detention of [Plaintiff] after she was entitled to pre-trial release on bail and **again** after she was entitled to release after resolution of her state charges." *Miranda-Olivares* at 18. (Emphasis added).

The Second Detentions of Ms. Garay and Mr. Lopez were not undertaken by the Defendants in this case. Rather, the Second Detentions were made by ICE. Because ICE is not a party to this case it is unknown what procedures ICE undertook after detaining the Plaintiffs with respect to a probable cause determination. However, it is undisputed that Defendants did not hold either Ms. Garay or Mr. Lopez for even 24 hours, let alone 48 hours, after they might have otherwise been released from the first detention.

As stated, it is undisputed that the City held Ms. Garay for less than 24 hours by CLV after

she became eligible for release.[2] Mr. Lopez was held for an even shorter time.[3]  As a result any claim that CLV, as opposed to another agency such as ICE, violated Plaintiffs' Fourth Amendment rights must fail because the Plaintiffs were not in LVDPS custody beyond the presumptive 48 hour period in which a governmental entity should make a probable cause determination.

## C.  LVDPS' CONDUCT COMPLIED WITH THE LIMITATIONS OF *GERSTEIN V. PUGH*

It is undisputed that the detention of Plaintiffs by the LVDPS pursuant to the Second Detention, if at all, was for less than 48 hours.  In *Gerstein v. Pugh* the United States Supreme Court analyzed whether a person arrested and jailed pursuant to a prosecutor's information is entitled to a determination that probable cause exists from a neutral magistrate. *Gerstein v. Pugh*, 420 U.S. 103, 105 (1975)  The Court determined that "a probable cause determination is not a constitutional prerequisite to the charging decision, it is required only for those suspects who suffer restraints on liberty other than the condition that they appear for trial."  *Id*. at 126. "Under this practical compromise, a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest." *Id.* at 113-14.  That analysis applies here.

Of course, in this case the arrest and detention to be analyzed is the Second Detention by ICE:  the one undertaken by ICE after release from the CLVDF. But Plaintiffs have offered no evidence with respect to their treatment pursuant to the Second Detention or the government's efforts to establish probable cause for the Second Detention.  We know that both Plaintiffs were in the custody of ICE, and not LVDPS, at the time that the presumptive 48 hour period within which the government should make a probable cause determination expired.  *County of Riverside*

---

[2] Ms. Garay became eligible for release from CLVDF at 0614 on July 25, 2018.  Ms. Garay was taken into ICE custody at 0535 on July 26, 2018.
[3] Mr. Lopez became eligible for release from CLVDF at 2031 on April 24, 2018.  Mr. Lopez was taken into ICE custody at 0542 on April 25, 2018.

*v. McLaughlin*, 500 U.S. 44, 56-57 (1991) (Where an arrested individual does not receive a probable cause determination within 48 hours, the calculus changes. In such a case, the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance).

The involvement of LVDPS in the Second Detention was to merely provide an opportunity for ICE to take custody of the Plaintiffs.  The receipt of a detainer request from ICE provides adequate probable cause for the City to hold an individual for a reasonable period.  Of course, LVDPS has no mechanism for making a probable cause determination in an immigration case. City Judges are not immigration judges.  Consequently, it is reasonable for the City to defer to ICE in establishing probable cause since the Second Detention is for the benefit of ICE.

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved." *Brinegar v. United States*, 338 U.S., at 174-175. So, to the extent that the conduct of the City Defendants in this case with respect to the Second Detention is subject to a Fourth Amendment analysis, which it is not, it still would pass muster. Specifically, with the information provided to the CLVDF by both the Defendants themselves and ICE, it was reasonable for the CLVDF to determine that the probabilities favored holding the Defendants *for less than 48 hours* to facilitate the request by ICE which, presumably was undertaking a process to meet the requirements of the Fourth Amendment with respect to the Second Detention.   Of course, because Plaintiffs did not sue ICE in this case and otherwise failed to develop any evidence of what transpired in the period between ICE taking custody and the expiry of the presumptive 48 hour period it is impossible to determine whether Plaintiffs' rights were indeed violated by ICE.  However, there is no dispute of material fact regarding whether

LVDPS held the Plaintiffs beyond that mark.  The answer is no.

But even a detention in excess of 48 hours does not automatically violate the Fourth Amendment.  Although a hearing within 48 hours <u>may</u> nonetheless violate *Gerstein* if the arrested individual can prove that his or her probable cause determination was delayed unreasonably, courts evaluating the reasonableness of a delay must allow a substantial degree of flexibility, taking into account the practical realities of pretrial procedures.  Where an arrested individual does not receive a probable cause determination within 48 hours, the burden of proof shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance, which cannot include intervening weekends or the fact that, in a particular case, it may take longer to consolidate pretrial proceedings. *County of Riverside v. McLaughlin*, 500 U.S. 44, 55-58 (1991). So, even under the worst case scenario promoted by Plaintiffs, the burden is merely shifted to the government, in this case ICE, to show the reason for any alleged delay.  In any event, as discussed herein, the CLV defendants had no role in determining whether probable cause existed for the Second Detention by ICE as both of the Plaintiffs were out of LVDPS custody within 24 hours of the start of the Second Detention.

## D. LVDPS' CONDUCT WAS REASONABLE UNDER THE CIRCUMSTANCES OF THIS CASE

While Plaintiffs' Motion for Summary Judgment is replete with conclusory accusations that "ICE had no probable cause to support an issuance of a detainer or an administrative warrant." (*See,* Plaintiffs' Motion for Summary Judgment Pg. 17, ln. 20-21), or that "[i]t was only after LVDPS personnel gave ICE access to incarcerated individuals that ICE was able to verify – through misrepresentation and lack of identification – that an incarcerated individual's immigration status was in question." *Id*. at lines 23-24, there is no prohibition on such cooperation by LEAs.  Clearly the Constitution does not prohibit the LVDPS from allowing federal officers to interview people in its custody.  And that is all that Plaintiffs allege LVDPS did here.  The obvious purpose of the interviews by ICE is to assist ICE in investigating whether probable cause exists to

1   further evaluate an individual's immigration status.  The Plaintiffs cannot have it both ways.  They

2   cannot complain that the City allowed ICE to interview them regarding their immigration status

3   while also arguing that the City violated their Fourth Amendment rights.  Finally, there is no

4   evidence in this case that ICE's information was inaccurate or that Plaintiffs' immigration status

5   was legal.

6        The Ninth Circuit has determined that even in cases where a state actor's decision to detain

7   an individual violates state law, such action still does not violate the Fourth Amendment.

8        Critically, we have already applied *Moore* to conclude that the absence of state
    authorization for a state officer to enforce federal immigration law does not render
9        the officer's seizure of an individual for the suspected *civil* immigration offense of
    unlawful presence in the United States a Fourth Amendment violation.  *See,*
10       *Martinez-Medina v. Holder*, 673 F.3d 1029, 1031–32 (9th Cir. 2011).
    *Gonzalez v. U.S. Immigration & Customs Enf't*, 975 F.3d 788, 817-18 (9th Cir.
11       2020)

12       The Court's reasoning is because to establish a violation of substantive due process, a

13   plaintiff must also prove that the challenged government action was "clearly arbitrary and

14   unreasonable, having no substantial relation to the public health, safety, morals, or general

15   welfare." *Village of Euclid v. Ambler Realty Co.,* 272 US 365, 395 (1926); *Patel v. Penman,* 103

16   F3d 868, 874 (9ᵗʰ Cir 1996) (citation omitted), *overruled on other grounds by Nitco Holding Corp.*

17   *v. Boujikian,* 491 F3d 1086, 1089 (9ᵗʰ Cir 2007). The standard is whether the challenged conduct

18   "shocks the conscience," under which "only the most egregious official conduct can be said to be

19   'arbitrary in the constitutional sense.'" *County of Sacramento v. Lewis,* 523 US 833,

20   846 (1998), *abrogated on other grounds by Saucier v. Katz,* 533 US 194 (2001); *see also Sylvia*

21   *Landfield Trust v. City of L.A.,* 729 F3d 1189, 1195 (9ᵗʰ Cir 2013).

22       Here, the facts are undisputed that both Ms. Garay and Mr. Lopez advised that they were

23   not born in the U.S.  Subsequently, ICE issued detainers for both of them, which stated that "DHS

24   has determined that probable cause exists that the subject is a removable alien.  This determination

25   is based on: Biometric confirmation of the alien's identity and records check of federal databases

12

1    that affirmatively by themselves or in addition to other reliable information, that the alien either

2    lacks immigration status or notwithstanding such status is removable under US immigration law;

3    and statements made by the alien to an immigration officer and/or other reliable evidence that

4    affirmatively indicate the alien either lacks immigration status or notwithstanding such status is

5    removable under US immigration law."[4]  Consequently, honoring ICE's request to hold them until

6    ICE could take custody was not unreasonable and does not "shock the conscience." *See* PX11

7            Absent an identification of a "systematic error" in ICE's database practices there is no

8    Fourth Amendment violation under these circumstances.  "Thus, to find for Plaintiffs on this claim,

9    it was not enough for the district court to identify errors in individual databases on which ICE

10   relies. Instead, the district court had to make findings about and explain how this system of

11   databases results in 'unreliable' probable cause determinations." *Gonzalez v. U.S. Immigration &*

12   *Customs Enf't*, 975 F.3d 788, 822 (9th Cir. 2020)  The Court initially reinforced the primacy of

13   probable cause in the evaluation of whether a warrantless arrest comports with the Fourth

14   Amendment. *Id*. at 171, 128 S.Ct. 1598 ("[W]hen an officer has probable cause to believe a person

15   committed even a minor crime ... the arrest is constitutionally reasonable."); *Id*. at 173, 128 S.Ct.

16   1598 ("[A]n arrest based on probable cause serves interests that have long been seen as sufficient

17   to justify the seizure.") *Id*. 975 F.3d 788, 817 (9th Cir. 2020).

18          Here, LVDPS was presented with a detainer that on its face declared that the federal

19   government had "made a determination that probable cause exists" based upon both "biometric"

20   information and "statements made by [the Plaintiffs]" themselves.   In the Ninth Circuit,

21   government action taken as the result of "reasonable, though possibly erroneous, legal

22   interpretation" does not rise to the level of egregious conduct. *Brittain v. Hansen*, 451 F3d 982,

---

[4] Notably absent in this case is any contention by the Plaintiffs that this information was erroneous or that they were not present in the country illegally.  In fact, both Plaintiffs admitted that only after their detention by ICE related to this case did they obtain legal authority to be in the U.S.  *See*, Exhibit B Pg. 35, ln. 16 – Pg. 36, ln. 6 and Exhibit A Pg. 27, ln. 10 – Pg. 33, ln. 1.

996. (9th Cir. 2006)  "We do not require police officers to act as legal experts to avoid violating the Constitution." *Id.* Even if this court concludes, as Plaintiffs urge, that compliance with an ICE detainer is not mandatory, the City could have reasonably reached a different conclusion. Even though the City never undertook an independent analysis of the mandatory or voluntary nature of complying with an ICE detainer, had it done so, however, it still may have reasonably concluded that compliance with an ICE detainer is mandatory, as have some federal district courts. Even if wrong, it is not necessarily "unreasonable."  Because the City's compliance with facially valid ICE detainers issued for Ms. Garay and Mr. Lopez in this case does not "shock the conscience," summary judgment should be denied in favor of the Plaintiffs and granted in favor of the City.

Further, the US Supreme Court has made it clear that there is no "hard and fast" rule with respect to the time allowed to make a PC determination.

> Our task in this case is to articulate more clearly the boundaries of what is permissible under the Fourth Amendment. Although we hesitate to announce that the Constitution compels a specific time limit, it is important to provide some degree of certainty so that States and counties may establish procedures with confidence that they fall within constitutional bounds. Taking into account the competing interests articulated in *Gerstein*, we believe that a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*. For this reason, such jurisdictions will be immune from systemic challenges.

*County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991)

It therefore follows that a jurisdiction, like the CLV in this case, which no longer holds an individual in custody at the time that 48 hours has passed since the detention began cannot be in violation of the Fourth Amendment.  It is axiomatic that whatever decision was made with regard to holding or releasing the Plaintiffs in this case beyond 48 hours from the Second Detention was made by ICE, the entity which held them <u>at that time</u>.  Indeed, the CLV had no authority or ability to release the Plaintiffs at that point as they were in ICE custody in a different facility. Accordingly, the claims against the Defendants in this case must be dismissed.

### E.  LVDPS DID NOT FALSELY IMPRISON THE PLAINTIFFS

Plaintiffs' false imprisonment claim is, at least partly, predicated on the assertion that "as a matter of policy and practice, LVDPS retained Plaintiffs' clothes and personal effects, including wallets, identification documents, a purse, and several items of clothing, and refused to return them to Plaintiffs." *See,* Plaintiffs' Motion for Summary Judgment, Pg. 23, ln.12-14.  However in the next passage Plaintiffs contradict that very assertion and admit that LVDPS did not retain their personal belongings but that "instead, these items were turned directly over to ICE through a coordinated transfer protocol with that agency."  *See,* Plaintiffs' Motion for Summary Judgment, Pg. 23, ln. 16-17.  Once again, Plaintiffs seek to hold LVDPS accountable for the actions of ICE, a wholly unrelated and separate entity.  Plaintiffs state that they "do not challenge their initial arrests" thereby admitting that the initial detention by LVDPS was valid.

It is clear that Plaintiffs' false imprisonment claims must fail because those in this case cannot show that their incarceration by LVDPS was "without any legal cause or justification," *Hernandez v. City of Reno*, 97 Nev. 429, 433 (Nev. 1981)  In *Hernandez*, a case of mistaken identity resulted in Mr. Hernandez being held for <u>two weeks</u> by the City of Reno and Washoe Country based upon a warrant out of Utah.  In that case the Court affirmed that even though the information provided to the Nevada entities was ultimately determined to be wrong, their reliance on it was nevertheless reasonable.  Likewise, the City of Reno's delay of almost two weeks in arraigning Mr. Hernandez was justified under the circumstances where an outside agency had requested the detention and was providing information in support of it.  The Court found that the Reno officer's arrest based upon what eventually turned out to be erroneous information was nevertheless justified because it was based upon probable cause, even though it did not relate to the arrested individual.  In this case, LVDPS held Ms. Garay and Mr. Lopez for less than 24 hours and 12 hours, respectively, to allow ICE to retrieve them.  Just as in *Hernandez*, LVDPS had been provided with information from an outside agency which established probable cause.  Unlike in

1    *Hernandez* there has been no showing in this case that the information provided by ICE – that the

2    Plaintiffs were subject to removal by Immigration – was erroneous in any way.   So, if a

3    municipality is justified in holding an individual for two weeks based upon inaccurate charging

4    information, then clearly LVDPS was justified in holds of less than 24 hours based upon perfectly

5    accurate information.

6            Plaintiffs also cite to *Kellogg v. State* in support of their claims.   However, a careful reading

7    of *Kellogg* actually undermines Plaintiffs' case here.   In *Kellogg* the Plaintiff was held pursuant to

8    a parole detainer.   In that case the Court found that the subsequent detention instigated at the

9    request of Kellogg's parole officer was lawful.   The City defendant and officers were dismissed

10   from that case pursuant to summary judgment, because it was the actions of the parole board and

11   the parole officer, and not the City jailers, which were the focus of the Court's inquiry.   Even then

12   the *Kellogg* court found that a subsequent 7 day delay in releasing Kellogg after the Parole Board

13   had ordered his release was justified. "Like police officers, parole officers are privileged to cause

14   the arrest, detention, and revocation of parole if they have a 'reason to believe' there was a breach

15   of a condition of parole or a violation of a law.*" Kellogg v. State*, 94 Wn. 2d 851, 855 (Wash.

16   1980)  The obvious correlation in this case is that immigration officers are also privileged to cause

17   the arrest if they have a "reason to believe" that an immigration violation has occurred.   In this

18   case we know that the fact that both Plaintiffs admitted to their non-citizenship status was known

19   by ICE.   This information combined with whatever database information ICE reviewed prior to

20   issuing the detainers in this case (which is unknown) may even insulate ICE from liability, but it

21   definitely insulates the City defendants.

22       **F.  PLAINTIFFS WERE NOT DENIED BAIL**

23           Plaintiffs' claim that they were denied bail must also fail.   As clearly established, and

24   admitted by Plaintiffs, the detention at issue in this case was the Second Detention:  the one

25   undertaken by ICE on suspicion of immigration violations.   It is undisputed that Plaintiffs were

16

offered bail on the first detention pursuant to the City charges.  It is likewise undisputed that the arrests on City charges were reviewed by Municipal Court judges in the relevant jurisdictions and found to have been made with probable cause.  As discussed throughout these papers it is the release from the City charges, through bail or otherwise which began the Second Detention by ICE.  Both Plaintiffs were provided with bail amounts on their City charges.  However, the families of both decided not to post the bail because it would simply precipitate their release to ICE and not "to the streets."  That is far different from Plaintiffs' claim that the LVDPS was "categorically denying bail."  A decision by Plaintiffs and their family to not post bail because the immigration detainer would thwart an immediate release is not "denying bail."  Had Plaintiffs actually posted bail at any time while in LVDPS custody their release pursuant to that bail would have been processed, and the transfer of ICE would have been effectuated within 48 hours of that time pursuant to the detainer or, if ICE didn't appear to take custody they would be released to the streets.

### G.  PLAINTIFFS WERE NOT DENIED DUE PROCESS BY LVDPS

Plaintiffs' reliance on *Rivas v. Martin* for the proposition that "holding such inmates beyond their scheduled release times was a denial of due process" is misplaced here because, as Plaintiffs fail to mention, in that case the claimant was held by the municipality for much longer than the 48 hour presumptive limit.  In that case the Court merely declined to grant the defendant City's Rule 12 motion to dismiss finding that Rivas' detention was invalid only "after she posted bond and the detainer expired." *Rivas v. Martin*, 781 F. Supp. 2d 775, 782 (N.D. Ind. 2011)  Of course that is not the case here as it is undisputed that the period of time that both Ms. Garay and Mr. Lopez were in the custody of LVDPS pursuant to the Second Detention was substantially less than 48 hours.[5]

---

[5] In this case, Plaintiff Lopez Jimenez was held for nearly 12 hours beyond his release time. *See* PX11, Lopez-Jimenez Inmate File at 3; PX28 at 20. Plaintiff Moya-Garay was held for one day beyond her release

1

2    In analyzing the propriety of holding an individual pursuant to an ICE detainer beyond the

3    time they would otherwise be released the *Rivas* court actually found such detention lawful as long

     as it was for less than 48 hours:

4

5        The language of the detainer and of 8 C.F.R. § 287.7 made it clear that defendants
         could only hold Rivas for an additional 48 hours under the detainer. Courts have
6        determined that 8 C.F.R. § 287.7 'requires only that the official upon whom the
         INS has served a detainer hold the alien, who could otherwise no longer be
7        lawfully detained, for up to 48 hours in order to permit the INS to assume custody
         of him.' *Royer v. INS,*730 F. Supp. 588, 591 (S.D.N.Y. 1990); *Moreno Escobar v.*
8        *U.S. Dep't of Justice,* No. Misc. 05-0048, 2005 WL 1060635, at *1 (E.D. Pa.
         2005) (unpublished) (citing to 8 C.F.R. § 287.7(d) and stating '[p]ursuant to a
9        detainer request, state or federal officials may hold an alien for forty-eight hours
         after his release date').
10

11       *Rivas v. Martin*, 781 F. Supp. 2d 775, 782 (N.D. Ind. 2011)

12       *The City of Las Vegas suspended Immigration holds beyond the time an*
         *individual would be otherwise released in 2019.*
13

14       Perhaps nowhere is Plaintiffs' outrage more feigned and misplaced than where they insist

15   that "LVDPS never ended the policy of detaining individuals on ICE detainers."   All of the

16   evidence adduced during discovery in this case made it consistently clear that since October of

17   2019 the City of Las Vegas no longer holds individuals beyond the time they would otherwise be

18   released for the purpose of ICE detainers.  The fact that the "formal policy" has not been updated

19   in the computer system is of no import.  Every DPS employee who testified in this case, from

20   LESTs to Deputy Chiefs, testified that it was the practice and procedure that individuals were no

21   longer to be held for even 48 hours for ICE.  Any attempts by Plaintiffs to insinuate that LVDPS's

22   practice is the same now as it was at the time of their respective incarcerations is disingenuous and

23   not supported by a single piece of evidence.

24

25   / / /

26

27

28

---

time. *See* PX30, Moya Inmate File at 2; PX28 at 34. Plaintiff's Motion for Summary Judgment at Page 24, lines 4-7.

## H.  ARRIBA LAS VEGAS WORKER CENTER HAS NO STANDING

Plaintiff Arriba Las Vegas Worker Center ("Arriba") lack standing to sue Defendants in this case.  A party generally may assert only his or her own rights and cannot raise the claims of third parties not before the court. The Supreme Court has explained that "even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, …the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 2205 (1975) (citations omitted); *see also United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 554-58, 116 S. Ct. 1529, 1535-37 (1996) (discussing the bar against third-party standing as prudential).

By its own admission Arriba's "mission is to develop, educate, and empower worker and migrant communities to take action to defend their rights as workers and migrants.  In furtherance of their mission Arriba: (1) provides training on workplace health and safety and supports workers to report violations and hazards at work, as well as support workers to advocate for safe and healthy working conditions and access to personal protective equipment on the job; (2) assists workers in addressing issues related to wage theft by unscrupulous employers/contractors; and (3) supports Temporary Protected Status ("TPS") holders in Nevada build a movement for permanent residency for all TPS families"  Complaint paragraph 32.  Arriba claims that "has also had to divert its resources, including staff time, to address ICE detainers in Las Vegas' city and county jails."  Complaint paragraph 34.

Although the Supreme Court has recognized four exceptions to the prohibition against third-party standing (provided the constitutional standing requirements of injury, causation, and redressability are met), Arriba does not fall under any of the four.

*Obstacles to Third-Party Exception*

The first exception is where the third party is unlikely to be able to sue – i.e., a person

19

may assert the rights of a third party not before the court if there are substantial obstacles to the third party asserting his or her own rights and if there is reason to believe that the advocate will effectively represent the interests of the third party. *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956, 104 S. Ct. 2839, 2846 (1984). Examples of such third-party standing cases include *Barrows v. Jackson*, 346 U.S. 249, 73 S. Ct. 1031 (1953) (permitting a white individual sued for breaching a racially restrictive covenant to assert the rights of blacks in the community); *Eisenstadt v. Baird*, 405 U.S. 438, 446, 92 S. Ct. 1029, 1034 (1972) (concluding that "unmarried persons denied access to contraceptives in Massachusetts…are not themselves subject to prosecution and, to that extent, are denied a forum in which to assert their own rights."); and *Powers v. Ohio*, 499 U.S. 400, 111 S. Ct. 1364 (1991) (parties in litigation may raise the claims of prospective jurors to be free from discrimination in the use of peremptory challenges). The third parties here, on the other hand, Garay and Lopez, are not only likely to be able to sue, but did so as plaintiffs in this very case.

*Close Relationship Exception*

The second exception is a close relationship between the plaintiff and the third party, where the individual seeking standing is part of the third party's constitutionally protected activity. *See*, e.g., *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 45 S. Ct. 571 (1925) (allowing third-party standing because of the close relationship that existed between the school and the parents and because the school was part of the regulated activity of providing parochial education); *Singleton v. Wulff*, 428 U.S. 106, 118, 96 S. Ct. 2868, 2876 (1976) (concluding that "it generally is appropriate to allow a physician to assert the rights of women patients as against governmental interference with the abortion decision"); and *Craig v. Boren*, 429 U.S. 190, 195, 97 S. Ct. 451, 456 (1976) (observing that "vendors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function"). In this case there was

1    no relationship at all between Garay, Lopez and Arriba at the time of the relevant actions in this

2    case.  Indeed, there is every indication that Arriba actually recruited Garay and Lopez for the

3    purpose of serving as Plaintiffs in this case.

4

5           11.· · · ·Q (by Mr. Galliher)· · Okay.· All right.· So what is your
       12· ·relationship with Arriba?

6           13· · · · A (by Ms. Garay)· · I consider myself a volunteer with them.
       14· · · · Q· · And when did you start volunteering with

7           15· ·Arriba?
       16· · · · A· · Right after I was released from

8           17· ·immigration.
       18· · · · Q· · And how did that happen?

9           19· · · · A· · I was introduced to her by my sister.
      Exhibit A, Page 78.

10

11         1.  Q (by Mr. Galliher)· · How long have you been -- strike that.
      ·2· · · · · · ·When did you first learn about the

12         ·3· ·Arriba Las Vegas Worker Center?
      ·4· · · · A (by Mr. Lopez)· · Once I got out of immigration.

13         ·5· · · · Q· · And how did you learn about them?
      ·6· · · · A· · I learned that from my wife.

14         ·7· · · · Q· · Do you know where she learned it?
      ·8· · · · A· · I don't know.· I don't know where she

15         ·9· ·learned that, but when I was detained by ICE is
      10· ·when she told me she learned about Arriba Las

16         11· ·Vegas.
      12· · · · Q· · Prior to you being detained by ICE in

17         13· ·April 2018, did you have any -- did you ever hear
      14· ·of Arriba Worker Center -- Arriba Las Vegas Worker

18         15· ·Center before that?
      16· · · · A· · No, didn't know that.

19         Exhibit B, Page 86
      15     Q· · (by Mr. Galliher) When, to your knowledge, when did

20         16· ·Mr. Jimenez-Lopez in this case, the plaintiff in
      17· ·this case, when did he become a member of Arriba?

21         18· · · · A· · After his release from detention.
      19· · · · Q· · After his release from ICE detention in

22         20· ·this case?
      21· · · · A· · Correct.

23         22· · · · Q· · And same question for Ms. Moya Garay,
      23· ·when did she become a member?

24         24· · · · A· · Same answer.

25

26         Attached as **Exhibit C** is a copy of the deposition transcript of Bliss Requa-Trautz.  *See*,

27   Exhibit C, Pg. 38, ln. 15-24

28

*The Overbreadth Doctrine Exception*

The third exception is the overbreadth doctrine, which provides that "[g]iven a case or controversy, a litigant whose own activities are unprotected may nevertheless challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court." *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 634, 100 S. Ct. 826, 834 (1980) (citations omitted) (emphasis added). When there is a danger of chilling free speech, the *Joseph H. Munson* Court explained that "[l]itigants…are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." 467 U.S. at 956-57, 104 S. Ct. at 2847. Neither Ms. Garay, Mr. Lopez nor Arriba allege a violation of their First Amendment rights in this case. *See Complaint Doc #1 generally*.

*Standing for Associations Exception*

The fourth and final exception is standing for associations. An organization has standing to sue on its own behalf if it has been injured as an entity. *See*, e.g., *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S. Ct. 1114 (1982). Here, Arriba is a non-profit suing on its own behalf. *See* Doc #1 at ¶¶ 32-39. However, Arriba could not have been injured as an entity as it is not subject to detention for immigration violations. Rather, Arriba bases its claims on the assertion that its operational decisions are somehow dictated by government policy. *Id*. at ¶ 34. But Arriba has testified that in fact it has "a bond fund organized which operates within organizational programming." In other words, Arriba has made the decision to stray from its original mission of helping workers with workplace issues into the much broader category of immigration reform.

```
18    Q    (by Mr. Galliher) Well, in these cases.  What I'm trying
19  to figure out is, is the money that is used for
20  immigration defense and bond, does that come from
21  grants, or is that from a different source?
22    A  (by Ms. Requa-Trautz) I think there's a distinction that's
```

23   important between current and at the time both of
24   those individuals were detained.
25       Q    Go ahead and tell me what that

1       distinction is.
2       A    Well, so your question is largely
3   individual donors.   The structure of fundraising
4   has changed.
5       Q    In what way?
6       A    At the time that both individuals were
7   detained, we supported their crowd funding, if you
8   will, campaign, or families who were fundraising
9   for themselves and --
10      Q    So if --
11      A    Go ahead.
12      Q    Go ahead and finish.
13      A    At this time we have a bond fund
14  organized which operates within organizational
15  programming.
16      Q    So if I understand what you're telling
17  me, so back then in 2018 or so, it was kind of on
18  a case-by-case basis as it came up, but since
19  then, Arriba has established a bond fund that is
20  an ongoing campaign?

21      A    Correct.
*See*, Exhibit C Pg. 45, ln. 1 – Pg. 46, ln. 21


Alternatively, an organization might try to sue on behalf of its members. *See*, e.g., *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 78 S. Ct. 1163 (1958). Nowhere in the Complaint does the Arriba make the representation that it is suing in a representational capacity. Likewise, neither Ms. Garay nor Mr. Lopez had any association whatsoever with Arriba at the time of the events which give rise to this case.

Since Arriba lacks standing to sue, its claims should be dismissed.

## IV.

## CONCLUSION

The material facts in this case are largely undisputed.   However, Plaintiffs' failure to include ICE as a defendant as well as Plaintiffs' flawed interpretation of the law renders their claims fatally deficient.   Plaintiff Arriba lacks standing.   For the reasons set forth herein

1  Defendants respectfully request that the Court GRANT their motion for summary judgment and

2  enter judgment in favor of the Defendants.

3       DATED this 28th day of February, 2022.

4                      BRYAN K. SCOTT
                    City Attorney

5

6                      */s/ Jeffrey Galliher*
               By: _____

7                      JEFFREY L. GALLIHER
                    Deputy City Attorney
                    Nevada Bar No. 8078

8                      495 South Main Street, Sixth Floor
                    Las Vegas, NV 89101

9                      Attorneys for Defendants

10  **CERTIFICATE OF SERVICE**

11       I hereby certify that on February 28, 2022, I served a true and correct copy of the foregoing

12  *Defendants' Counter-Motion for Summary Judgment* through the CM/ECF system of the United

13  States District Court for the District of Nevada (or, if necessary, by United States Mail at Las

14  Vegas, Nevada, postage fully prepaid) upon the following:

15  F. Travis Buchanan, Esq.                 Ernest Herrera, Esq.
THE COCHRAN FIRM--LAS VEGAS     Leticia Saucedo, Esq.

16  701 East Bridger Avenue\, #540          MEXICAN AMERICAN LEGAL DEFENSE
Las Vegas, NV 89101                AND EDUCATIONAL FUND

17  *Attorneys for Plaintiffs*              634 S. Spring St., 11th Floor
                         Los Angeles, CA 90014

18                           *Attorneys for Plaintiffs*

19

20                 /s/ Kelli Hansen

21               _____
             AN EMPLOYEE OF THE CITY OF LAS VEGAS

22

23

24

25

26

27

28