1
2
3
4
5
6
7
8
9
10
11
12
13

Ernest Herrera (pro hac vice)
Leticia Saucedo (pro hac vice)
Luis Lozada (pro hac vice)
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
634 S. Spring St., 11th Floor
Los Angeles, CA 90014
Telephone:  (213) 629-2512
Facsimile:  (213) 629-0266
eherrera@maldef.org
lsaucedo@maldef.org
llozada@maldef.org

F. Travis Buchanan, Esq.
NV Bar No. 9371
The Cochran Firm – Las Vegas
701 E. Bridger, Suite 540
Las Vegas, NV 89101
Telephone:  (702) 331-5478
Facsimile:  (702) 629-6919
FtbLaw@gmail.com

*Attorneys for Plaintiffs*

14
15
16

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| ALICIA INES MOYA GARAY, JUAN JAIME LOPEZ-JIMENEZ, and ARRIBA LAS VEGAS WORKER CENTER,<br><br>               Plaintiffs,<br><br>   vs.<br><br>CITY OF LAS VEGAS, a municipality; MICHELE FREEMAN, in her official capacity as City of Las Vegas Chief of Department of Public Safety; BANANTO SMITH, in his individual capacity and official capacity as Deputy Chief of Detention Services;<br><br>               Defendants. | Case No. 2:20-cv-00119-GMN-EJY<br><br>**PLAINTIFF ARRIBA LAS VEGAS WORKER CENTER, ALICIA MOYA-GARAY, AND JUAN LOPEZ-JIMENEZ'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

1

## TABLE OF CONTENTS

2

Page(s)

3

I.   Introduction…………………………………………………………………………..1

4

II.  Background……………………………………………………………………….1-4

5

III. ICE is Not a Necessary Party under the Three Grounds Articulated by Rule 19(a)………….4

6

    A.  *Defendants Cannot Bring a Motion to Dismiss under Rule 12(b)(7)*………………..4-5

7

    B.  *Step One: ICE, the Absent Party, is not Necessary*……………………………………5

8

9

       i.  *ICE is Not Necessary to Render Complete Relief Between the Existing Parties*...5-6

10

       ii. *Resolution of the Case Does Not Impair or Impede the Interests of ICE*………...6-8

11

       iii. *The Absence of ICE Will Not Cause Defendants to Have Inconsistent*

12

          *Obligations*…………………………………………………………………8-9

13

    C.  *Step Two: Because Joinder is Feasible, ICE May be Joined*………………………..9

14

    D.  *Step Three: Resolution of the Case Without ICE as a Party is Wholly Within the*

15

       *Bounds of Equity and Good Conscience*…………………………………………...9-10

16

17

IV.  LVDPS Failed to Meet its Fourth Amendment Obligations When It Continued to Detain

18

    Individuals Beyond Their Release Dates and Times……………………………………10-12

19

V.   *Gerstein v. Pugh* and *County of Riverside v. McLaughlin* Support the Conclusion that

20

    LVDPS is Required to Establish *Some* Procedure to Ensure that Detentions on Immigration

21

    Detainers are Supported by Probable Cause………………………………………....12-13

22

23

VI.  The City's Legal Interpretation of the Nature of ICE Detainers is Unreasonable…………..14

24

VII. Because LVDPS held Plaintiffs on Immigration Detainers without Probable Cause, Plaintiffs

25

    were Falsely Imprisoned…………………………………………………………………14-15

26

VIII. Defendants Admit That They Deny Bail to Individuals with ICE Detainers and Therefore

27

    Deny Plaintiffs Due Process……………………………………………………………15-18

28

---

IX.    Plaintiff Arriba Las Vegas Workers Center Has Standing……………………………..18-20

Conclusion………………………………………………………………………………….20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Page(s)

Cases

*Allen v. City of Portland*,
73 F.3d 232 (9th Cir. 1995) ................................................................................................... 14

*Alto v. Black*,
738 F.3d 1111 (9th Cir. 2013) ................................................................................................. 8

*Baker v. McCollan*,
443 U.S. 137 (1979) ............................................................................................................... 13

*Blumberg v. Gates*,
204 F.R.D. 453 (C.D. Cal. Nov. 6, 2001) ............................................................................... 9

*Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*,
547 F.3d 962 (9th Cir. 2008) ................................................................................................. 11

*County of Riverside v. McLaughlin*,
500 U.S. 44 (1991) ................................................................................................................. 16

*Dawavendewa v. Salt River Project Agr. Imp. and Power Dist.*,
276 F.3d 1150 (9th Cir. 2002) ........................................................................................... 5, 12

*Disabled Rights Action Comm. v. Las Vegas Events, Inc.*,
375 F.3d 861 (9th Cir. 2004) ............................................................................................... 8, 9

*Dredge Corp. v. Penny*,
338 F.2d 456 (9th Cir. 1964) ................................................................................................... 7

*E. Bay Sanctuary Covenant v. Biden*,
993 F.3d 640 (9th Cir. 2021) ........................................................................................... 21, 23

*E.E.O.C. v. Peabody Western Coal Co.*,
610 F.3d 1070 (9th Cir. 2010) ................................................................................................. 9

*Eldredge v. Carpenters 46 N. Cal. Joint Apprenticeship & Training Comm.*,
662 F.2d 534 (9th Cir. 1981) ................................................................................................... 8

*Fair Hous. of Marin v. Combs*,
285 F.3d 899 (9th Cir. 2002) ................................................................................................. 23

*Galaza v. Szalczyk*,
745 F.3d 634 (3d. Cir. 2014) ................................................................................................. 10

*Gerstein v. Pugh*,
420 U.S. 103 (1975) ..................................................................................................... 14, 15, 16

*Gonzalez v. ICE*,
    975 F.3d 788 (9th Cir. 2020)..............................................................................passim

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982)................................................................................................ 21

*Hernandez v. City of Reno*,
    634 P.2d 668 (Nev. 1981)....................................................................................... 17

*Ilae v. Tenn*,
    2013 WL 4499386 (D. Haw. Aug. 20, 2013) ........................................................ 20

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
    624 F.3d 1083 (9th Cir. 2010)........................................................................ 21, 22

*Lerner Shops of Nev., Inc. v. Marin*,
    83 Nev. 75, 423 P.2d 398 (1967) ........................................................................... 17

*Lopez-Valenzuela v. Arpaio*,
    770 F.3d 772 (9th Cir. 2014).................................................................................. 20

*Melendres v. Arpaio*,
    695 F.3d 990(9th  Cir. 2012).................................................................................. 14

*Moen v. Las Vegas Intern. Hotel, Inc.*,
    90 Nev. 176, 521 P.2d 370 (1974) ......................................................................... 17

*Padilla v. Kentucky*,
    559 U.S. 356 (2010)................................................................................................ 14

*Peabody Western Coal Co.*,
    400 F.3d ................................................................................................................. 12

*Rivas v. Martin*,
    781 F. Supp. 2d 775 (N.D. Ind. 2011) ................................................................... 20

*Salt River Project*,
    672 F.3d .................................................................................................................... 8

*Santos v. Frederick Cty. Bd.  of Comm'rs*,
    725 F.3d 451 (4th Cir. 2013).................................................................................. 14

*Shermoen v. United States*,
    982 F.2d 1312 (9th Cir. 1992)................................................................................... 9

*Temple v. Synthes Corp., Ltd.*,
    498 U.S. 5 (1990).................................................................................................... 12

*United States v. Bowen*,
    172 F.3d 682 (9th Cir. 1999)................................................................................. 6, 7

*United States v. Brignoni-Ponce*,
  422 U.S. 873 (1975) ............................................................................................ 13

*Ward v. Apple Inc.*,
  791 F.3d 1041 (9th Cir. 2015) ............................................................................ 10

*We Are Am./Somos Am., Coal. of Arizona v. Maricopa Cty. Bd. of Supervisors*,
  809 F. Supp. 2d 1084 (D. Ariz. 2011) ................................................................ 22

Rules

Fed. R. Civ. P. 19(a)(1)(A) ....................................................................... 8, 9, 10

Fed. R. Civ. P. 19(a)(1)(A) and (B) ................................................................... 8

Fed. R. Civ. P. 19(a)(1)(B)(i) ....................................................................... 9, 11

Fed. R. Civ. P. 19(a)(1)(B)(ii) ................................................................... 11, 12

Fed. R. Civ. P. 19(b) ................................................................................... 7, 12

Fed. R. Civ P. 19(a) and (b) ............................................................................... 6

Federal Rule of Civil Procedure 19 ................................................... 5, 6, 8, 9

Rule 12(b)(7) of the Federal Rules of Civil Procedure ........................... 5, 7, 8

Rule 19(a) ............................................................................... 6, 8, 9, 12

Rule 19(a)(1)(B) ................................................................................................ 10

Rule 19(b)(1)–(4) ............................................................................................. 12

Regulations

8 C.F.R. § 287.7(a) ............................................................................................ 10

Other Authorities

Tr. 108 ............................................................................................................... 14

*United Kingdom Mut. Steamship Assurance Ass'n (Bermuda), Ltd. v. Cont'l Maritime of San Francisco, Inc.*,
  1999 WL 354881 (N.D. Cal. Nov. 19, 1991) ...................................................... 11

Plaintiffs Arriba Las Vegas Worker Center, Alicia Moya-Garay, and Juan Lopez-Jimenez ("Plaintiffs") file this reply in support of their Corrected Motion for Summary Judgment [Dkt. No. 72], or in the alternative, response in opposition to Defendants Bananto Smith, Michele Freeman, and the City of Las Vegas' ("Defendants") Counter-Motion for Summary Judgment. Dkt. No. 78.

## I.      Introduction

Plaintiffs are entitled to summary judgment on their Fourth Amendment claims, Fourteenth Amendment claims, and false imprisonment claims, as well as the appropriate declaratory and injunctive relief primarily because Defendants fail to present any evidence that there is a genuine dispute regarding any material fact.  Indeed, Defendants admit that "[t]he facts in this case are not really in dispute."  Defendants' Response to Plaintiffs' Motion for Summary Judgment, or, Counter-Motion for Summary Judgment [Dkt. No. 78] ("Defs.' Response") at 1.    Furthermore, Defendants' arguments against Plaintiffs' motion and in favor of summary judgment for Defendants are based on an incorrect reading of the law, particularly the law concerning the Fourth and Fourteenth Amendments to the United States Constitution.

Defendants also improperly and incorrectly argue that the United States Immigration and Customs Enforcement ("ICE") is an indispensable party.  On the contrary, ICE is not even a necessary party here.  Defendants raise this defense improperly in a motion for summary judgment. Defs.' Response at 3-8.

## II.      Background

Defendants state that the "statement of facts contained within the Plaintiffs' Motion for Summary Judgment are essentially uncontested with respect to material issues."  Defs.' Response [Dkt. No. 78] at 1.  Accordingly, the following relevant facts are undisputed:

Since 2017, Defendants have detained individuals in jail beyond their release time because of ICE detainers; most of these individuals were charged with misdemeanors and would have been

release from jail by bail.  Plaintiffs' Corrected Motion for Summary Judgment ("Plfs.' Mot.") [Dkt. No. 72] at 1.  In 2017, the Las Vegas Department of Public Safety ("LVDPS") adopted and implemented a policy labeled COR-5962; under this policy, LVDPS would notify ICE when a foreign national was under LVDPS custody.  Plfs.' Mot. at 3.  The policy directed LVDPS personnel to honor immigration detainers issued by ICE to LVPS on ICE Form I-247A.  *Id.*

Based on Defendants' own admissions: (1) LVDPS personnel did not know whether ICE detainers were issued by a judge; (2) LVDPS personnel did not investigate whether there was probable cause to hold an individual on an ICE detainer; (3) the policy does not instruct LVDPS personnel to ask ICE for any information in addition to the ICE detainer; and (4) the policy does not require LVDPS to bring a detainee held on an ICE detainer before a neutral magistrate for a probable cause hearing.  *See* Dkt. Nos. 72 at 6; 78 at 14.  Furthermore, LVDPS has no mechanism to make probable cause determinations in immigration cases.  Defs.' Response at 10.  The policy also does not contain any procedure for having a neutral magistrate examine whether there is probable cause to hold an inmate beyond their release time based on an ICE detainer and warrant. Plfs.' Mot. at 3.

LVDPS personnel were aware that ICE detainers were issued by ICE.  Plfs.' Mot. at 7. After LVDPS took individuals into custody, and before ICE issued a detainer, LVDPS allowed ICE officers to conduct in-custody interviews questioning detainees about their immigration status.  *Id.* at 4.  When interviewing detainees, ICE officials did not identify themselves and conducted the questioning without the presence of LVDPS personnel.  *Id.*

In 2019, former Deputy Chief of Detention Services, Bananto Smith, sent a memo to LVDPS personnel stating that LVDPS would no longer hold individuals with ICE detainers up to 48 hours after their release time.  Plfs.' Mot. at 9.  LVDPS has not finalized any policy change in its computer system.  Dkt. Nos. 72 at 10; 78 at 18.  Since 2019, LVDPS continues to advise ICE

1
2
3
when a foreign national is under LVDPS custody and if ICE does not arrive to take custody, the foreign national is released to the streets.  Defs.' Response at 2.  LVDPS continued to hold individuals with ICE detainers beyond their release time up to 2020.  *Id.*

4
**Plaintiffs**

5
6
7
8
9
10
11
12
13
14
15
16
When Plaintiffs Moya-Garay and Lopez-Jimenez were stopped, law enforcement determined that the City of North Las Vegas had issued an arrest warrant for Plaintiff Lopez-Jimenez for unpaid traffic violations, and the City of Las Vegas had issued an arrest warrant for Plaintiff Moya-Garay for unpaid traffic violations. Dkt. Nos. 72 at 11–12; 78 at 1.  During the booking process, Plaintiffs Moya-Garay and Lopez-Jimenez confirmed that they were not born in the United States and, based on City of Las Vegas Department of Public Safety ("LVDPS") policy, LVDPS notified ICE that Plaintiffs Moya-Garay and Lopez-Jimenez were in custody.  Defs.' Response at 1.  Consequently, ICE issued a form I-247A Immigration Detainer for Plaintiffs Moya-Garay and Lopez-Jimenez; ICE further requested that, following any resolution of their city offenses and release from custody, LVDPS detain them for no more than 48 hours.  *Id.*

17
18
19
20
21
Plaintiffs Moya-Garay's family did not post bail because they were told that Moya-Garay would not be released to the streets, but instead be released to ICE.  Dkt. Nos. 72 at 11; 78 at 17.  It was LVDPS policy not to release individuals with ICE detainers even if they had paid bail.  Dkt. Nos. 72 at 7; 78 at 16–17.   After serving her sentence, Defendants held Plaintiff Moya-Garay for 24 hours after her release time and transferred her to ICE's custody.  *Id.*

22
23
24
25
26
Defendants held Plaintiff Lopez-Jimenez for three days until a municipal court judge allowed him to be released based on a payment plan and one-time payment of $400.  Plfs.' Mot. at 12.  After making the payment, Defendants held Plaintiff Lopez-Jimenez for 10 hours after his release time and transferred him to ICE's custody.  *Id.*

27
28
**III.    ICE is Not a Necessary Party under the Three Grounds Articulated by Rule 19(a).**

Because ICE is not a necessary party, it is also not an indispensable party. Defendants furthermore misconstrue the nature of Plaintiffs' action against Defendants. Rule 12(b)(7) of the Federal Rules of Civil Procedure allows dismissal for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). "Application of Federal Rule of Civil Procedure 19 determines whether a party is indispensable. The inquiry is a practical, fact-specific one, designed to avoid the harsh results of rigid application." *Dawavendewa v. Salt River Project Agr. Imp. and Power Dist.*, 276 F.3d 1150, 1154 (9th Cir. 2002).

Rule 19 of the Federal Rules of Civil Procedure provides a three-step process for determining whether the court should dismiss an action for failure to join an indispensable party. *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999). First, the court must determine whether the absent party is "necessary" under Rule 19(a). *Id.* Second, "[i]f the absent party is 'necessary,' the court must determine whether joinder is 'feasible.'" *Id.* (citing Fed. R. Civ P. 19(a) and (b)). "Finally, if joinder is not 'feasible,' the court must decide whether the absent party is 'indispensable,' i.e., whether in 'equity and good conscience' the action can continue without the party." *Id.* (citing Fed. R. Civ. P. 19(b)).

### A. Defendants Cannot Bring a Motion to Dismiss under Rule 12(b)(7)

Failure to join an indispensable party "may not be determined on a motion for summary judgment because it does not go to the merits of the lawsuit, nor does it bar an action on the subject matter, but only operates to abate that particular action." *Dredge Corp. v. Penny*, 338 F.2d 456, 464 (9th Cir. 1964). Here, Defendants cannot argue that ICE is an indispensable party through its "Counter-Motion for Summary Judgment" [dkt. no. 78]. Defendants must file a separate motion to properly bring a motion to dismiss under Rule 12(b)(7). However, because the deadline to file all dispositive motions expired on January 24, 2022, Defendants are barred from filing such a motion under Rule 12(b)(7). Therefore, the Court does not have to conduct an analysis under Rule 19 to determine whether ICE is an indispensable party.

**B.  Step One: ICE, the Absent Party, is not Necessary.**

Assuming the Court decides to proceed under Rule 19, the following analysis shows that ICE is not a necessary party and, therefore, the present action may proceed without ICE.  Under Rule 19(a), an absent party may be "necessary" based on three different grounds:

> First, a person is necessary if, in his absence, the court cannot accord complete relief among existing parties.  Second, a person is necessary if he has an interest in the action and resolving the action in his absence may as a practical matter impair or impede his ability to protect that interest.  Third, a person is necessary if he has an interest in the action and resolving in his absence may leave an existing party subject to inconsistent obligations because of that interest.

*Salt River Project*, 672 F.3d at 1179 (citing Fed. R. Civ. P. 19(a)(1)(A) and (B)).

**i.  ICE is Not Necessary to Render Complete Relief Between the Existing Parties.**

An absent party is a necessary party when "the court cannot accord complete relief among existing parties."  Fed. R. Civ. P. 19(a)(1)(A).  The term "complete relief" involves "consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the same cause of action."  *Alto v. Black*, 738 F.3d 1111, 1115 (9th Cir. 2013).  "This portion of the rule is concerned only with relief as between the persons already parties, not as between a party and the absent person whose joinder is sought."  *Eldredge v. Carpenters 46 N. Cal. Joint Apprenticeship & Training Comm.*, 662 F.2d 534, 537 (9th Cir. 1981) (internal quotation marks omitted).  Courts must examine whether the absent party "would preclude the district court from fashioning meaningful relief as between the parties."  *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004).

Here, Plaintiffs only seek monetary damages and injunctive relief against Defendants, not ICE.  Furthermore, Plaintiffs are not seeking relief that requires ICE to take any action or change its policy.  The Court, then, does not have to determine whether ICE is a necessary party under Rule 19(a)(1)(A).

**ii.  Resolution of the Case Does Not Impair or Impede the Interests of ICE.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

A party is necessary if the party has an interest in the action and resolving the action without that party may "as a practical matter impair or impede the [party's] ability to protect that interest." Fed. R. Civ. P. 19(a)(1)(B)(i). To determine whether an action impairs or impedes a party's interest, the court must examine two factors. First, the party's interest must be "legally cognizable" or "legally protected." *See Disabled Rights*, 375 F.3d at 861. Second, if the absent party has a legally protected interest, then the court must determine if that interest will be impaired or impeded by the suit. *Id.*

An absent party with an interest in the action is not a necessary party under Rule 19(a) "if the absent party is adequately represented in the suit." *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992) (internal citation and quotation marks omitted). An impairment "may be minimized if the absent party is adequately represented in the suit." *Disabled Rights*, 375 F.3d at 861 (citation omitted).

Here, ICE has no legally protected interest that would be impaired or impeded in this action. Furthermore, ICE has never raised an interest in this action. The Court, then, does not have to determine whether ICE is a necessary party under Rule 19(a)(1)(B)(i). A party having a legally protected interest "is predicated only on that party having a claim to an interest." *Shermoen*, 982 F.2d at 1317; *see also Blumberg v. Gates*, 204 F.R.D. 453, 455 (C.D. Cal. Nov. 6, 2001) ("The Court believes that it should, consistent with Rule 19, respect the decision of the absent parties [aware of the litigation], who have never claimed an interest in the present litigation, to remain on the sidelines."). As mentioned above, Plaintiffs are not seeking relief that requires ICE to change its policy. *E.E.O.C. v. Peabody Western Coal Co.*, 610 F.3d 1070, 1082 (9th Cir. 2010) ("A public entity has an interest in a lawsuit that could result in the invalidation or modification of one its ordinances, rules, regulations, or practices."). Because Plaintiffs do not seek to invalidate or modify ICE's policies regarding detainers, ICE does not have an interest in this lawsuit.

"[A]lthough the allegation that an entity is a joint tortfeasor with the defendant does not mean the entity must be joined in one action under Rule 19(a)(1)(A), there may be circumstances in which an alleged tortfeasor has particular interests that cannot be protected in a legal action unless it is joined under Rule 19(a)(1)(B)." *Ward v. Apple Inc.*, 791 F.3d 1041, 1048 (9th Cir. 2015) (*superseded on other grounds*). "[Ninth Circuit] cases also establish that an absent party may be required in an action seeking equitable relief that would prevent a defendant from fulfilling 'substantial' contractual obligations to the absent party." *Id.* at 1051. However, an absent party is not deemed necessary because it has a contract interest. *See id.* at 1053 ("We have not, however, held an absent party is always required when the relief sought in an action merely implicates an absent party's contract rights.").

In this case, there is no indication that Defendants have a substantial contractual obligation to ICE. This action arose because of Defendants' failure to justify its detention of Plaintiffs beyond their release time. ICE is only involved to the extent that it requested Defendants hold Plaintiffs, based on an ICE detainer. Defendants have not explained or given justification for holding Plaintiffs beyond their release time or provided evidence of probable cause to support the ICE detainers. As such, there is no evidence to suggest that Defendants have a contractual obligation or that ICE has a legally protected interest in this action that would be impaired or impeded.[1] Since there is no legally protected interest, the Court does not have to conduct an analysis whether Defendants adequately represents the interests of ICE in this action. Thus, ICE is not a necessary party under Rule 19(a)(1)(B)(i).

### iii. The Absence of ICE Will Not Cause Defendants to Have Inconsistent Obligations.

---

[1] ICE itself acknowledges that law enforcement agencies treat its detainers as non-mandatory and are simply "requests that an agency advise ICE, prior to release of the alien, in order to [ICE] to assume custody" of the alien. 8 C.F.R. § 287.7(a). Compliance with a detainer is left to the discretion of states and localities. *See Galaza v. Szalczyk*, 745 F.3d 634, 640-43 (3d. Cir. 2014).

A party is necessary if the party has an interest in the action and resolving the action without that party may "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."   Fed. R. Civ. P. 19(a)(1)(B)(ii). "Inconsistent obligations are not the same as inconsistent adjudications or results."   *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 976 (9th Cir. 2008). The Ninth Circuit has explained that "[i]nconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident."   *Id.*   "Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum."   *Id.*

Here, Plaintiffs seek monetary damages and injunctive relief against Defendants.   If Plaintiffs succeed against Defendants, Defendants would be able to comply with the Court's judgment without breaching another court's order regarding the same incident.   Specifically, Defendants would not face the risk of inconsistent obligations in this case because Plaintiffs' causes of action against Defendants are based on its detention of Plaintiffs beyond their release time without probable cause.   Furthermore, it is important to note, Plaintiffs have not sued ICE, and any future suit against ICE would be distinct from the present suit and involve different causes of action. Moreover, even if Plaintiffs later sue ICE, it does not rise to the level of mandating compulsory joinder to the present litigation.   *See United Kingdom Mut. Steamship Assurance Ass'n (Bermuda), Ltd. v. Cont'l Maritime of San Francisco, Inc.*, 1999 WL 354881, at *3 (N.D. Cal. Nov. 19, 1991) ("A possibility of multiple litigation with inconsistent results does not require joinder of an absent person.").   Because there is no indication that Defendants would be unable to comply with another court's orders, Defendants have not shown a substantial risk of incurring inconsistent obligations. Therefore, ICE is not a necessary party under Rule 19(a)(1)(B)(ii).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C.   Step Two: Because Joinder is Feasible, ICE May be Joined.

"Rule 19(a) sets forth three circumstances in which joinder is not feasible: when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction." *Peabody Western Coal Co.*, 400 F.3d at 779. Here, ICE can be joined to the present litigation because: (1) venue is proper in the City of Las Vegas where the injuries took place; (2) ICE is subject to personal jurisdiction under the State of Nevada; and (3) joining ICE would not destroy subject matter jurisdiction. Therefore, it is feasible for ICE to be joined as a party to this action.

### D.   Step Three: Resolution of the Case Without ICE as a Party is Wholly Within the Bounds of Equity and Good Conscience.

When an absent party must be joined if feasible but cannot be joined, the court "must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Rule 19(b). Here, because ICE is not a necessary party, the Court does not have to conduct an analysis under Rule 19(b).[2] *See Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 8 (1990) ("[N]o inquiry under Rule 19(b) is necessary, because the threshold requirements of Rule 19(a) have not been satisfied."). Therefore, ICE is not indispensable, and the Court may proceed without ICE in the current litigation.

Moreover, contrary to Defendants' assertions raised in their "Counter-Motion for Summary Judgment," ICE is not required to be joined for the Court to render complete relief. Defendants mistakenly argue that Plaintiffs' Complaint seeks to challenge the operations of ICE, and its authority to issue ICE detainers. Defendants further argue that Plaintiffs seek to invalidate ICE detainers throughout the State of Nevada. This is an incorrect interpretation of Plaintiffs' claims

---

[2] To determine whether the court should proceed without the absent party, the court must consider four factors: "(1) the prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum." *Dawavendewa*, 276 F.3d at 1161–62; *see also* Rule 19(b)(1)–(4) (listing the factors).

against Defendants.  Defendants' attempts to conflate their actions with ICE policies is also mistaken.

Plaintiffs only seek relief against Defendants because of their unconstitutional detention of Plaintiffs and other individuals beyond their release time, and Defendants' failure to examine the underlying basis for ICE detainers, including probable cause to hold Plaintiffs.  In other words, Defendants are liable for misunderstanding that ICE detainers alone do not constitute probable cause for holding Plaintiffs beyond 48 hours.  If Defendants sought to hold Plaintiffs beyond their release time, Defendants were required to obtain probable cause to constitutionally detain Plaintiffs for additional time.  Because Defendants failed to do so, Defendants are liable for their acts and omissions.  As such, Plaintiffs are not challenging ICE policies or detainers, ICE need not be joined to this action, and ICE's interests are not implicated.

**IV.  LVDPS Failed to Meet its Fourth Amendment Obligations When It Continued to Detain Individuals Beyond Their Release Dates and Times.**

The detentions by LVDPS and ICE were two separate detentions, each of which must meet Fourth Amendment requirements for valid probable cause determinations. The Parties agree that LVDPS detained Plaintiffs twice and that the second detention amounts to a new seizure.  It is well established that the Fourth Amendment "applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975).  The issue here is whether LVDPS complied with its obligations under the Fourth Amendment when it took custody of Plaintiffs the second time solely based on an administrative immigration detainer.  The Fourth Amendment requires a new probable cause determination if a detainee is kept in custody for a new purpose. *Baker v. McCollan,* 443 U.S. 137, 142 (1979) ("If an individual is "kept in custody for a new purpose after [the individual is] entitled to release, [that individual] was subjected to a new seizure for Fourth Amendment purposes—one that must be supported by a new probable cause justification.").  It was LVDPS that took individual

Plaintiffs into custody, after refusing to release them upon their release date and time.

Although LVDPS claims that ICE's immigration detainers should substitute for its own probable cause determinations, "[b]y its definition, probable cause can only exist in relation to criminal conduct. It follows that civil disputes cannot given rise to probable cause." *Allen v. City of Portland*, 73 F.3d 232, 237 (9th Cir. 1995). Immigration detainers are civil and administrative in nature. *See Padilla v. Kentucky*, 559 U.S. 356 (2010); *Melendres v. Arpaio*, 695 F.3d 990, 1001(9th Cir. 2012) ("[M]ere unauthorized presence is not a criminal matter."). "Suspicion that an individual has committed a civil immigration violation, by itself, does not give a law enforcement officer probable cause to believe that the individual is engaged in criminal activity." *Santos v. Frederick Cty. Bd. of Comm'rs,* 725 F.3d 451, 465 (4th Cir. 2013).

Here, the parties agree that Plaintiffs were held beyond their release dates based on immigration detainers. At the time LVDPS detained the individual Plaintiffs, its policy was to hold individuals on immigration detainers beyond the time they were eligible for release for up to 48 hours. Plfs.' Mot. PX 10 [Dkt. No. 72-11]. LVDPS applied this policy to detain hundreds of individuals up to and beyond 48 hours, before and after the detentions of the individual Plaintiffs. *See* Plfs.' Mot., PX28 [Dkt. No. 72-29]; PX24 [Dkt. No. 72-25]; Straube Dep. Tr. 108:13-112:10, 117:14-118:16 [Dkt. No. 72-27]. Instead of holding these individuals on probable cause of suspected criminal activity, LVDPS held individuals on civil immigration detainers. Because LVDPS has no authority to arrest individuals for civil immigration offenses, and because it had no probable cause to detain these individuals for criminal violations, detaining them beyond their release date for a second detention violated Plaintiffs' Fourth Amendment rights. *See Gerstein v. Pugh*, 420 U.S. 103, 111–12 (1975).

Even if the immigration detainers were supported by administrative warrants, these civil warrants do not meet Fourth Amendment requirements. These warrants were signed by ICE

officers, and not by an independent judge or official who could verify their validity, as the Fourth Amendment requires. *Gerstein*, 420 U.S. at 125.  Their administrative nature indicates that LVDPS, as the law enforcement agency conducting the seizure—even if on behalf of another agency—had the responsibility to ensure that probable cause existed for the continued detention after Plaintiffs' scheduled release date and time from LVDPS custody.

**V.** ***Gerstein v. Pugh* and *County of Riverside v. McLaughlin* Support the Conclusion that LVDPS is Required to Establish *Some* Procedure to Ensure that Detentions on Immigration Detainers are Supported by Probable Cause.**

If a law enforcement agency has no procedures for ensuring that probable cause exists for an arrest, it violates the Fourth Amendment, period.  The court in *Gerstein v. Pugh* started with the assumption that *some* procedure was in place to determine probable cause, and it concluded that not only was a proper procedure necessary, but that it had to be completed in a timely fashion.  It goes without saying that if there is no procedure, timeliness is a nonstarter.  A law enforcement agency cannot argue that its no-probable-cause-detention is proper under *Gerstein* simply because a detainee is held for a less than 48 hours.  *Both* the process and the timeliness are key to meeting Fourth Amendment requirements. *Gerstein v. Pugh*, 420 U.S. at 125 ("[S]tates must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer.").  Here, LVDPS admits that it has no mechanism for making probable cause determinations for immigration detainers ("of course, LVDPS has no mechanism for making a probable cause determination in an immigration case.").  Defs.' Response at 14.  LVDPS attempts to explain its failure to establish procedures by arguing that the federal government should be doing it.  LVDPS cannot so cavalierly dispose of its own Fourth Amendment obligations to ensure probable cause for a continued detention beyond a detainee's release date.

The promptness requirement of *Gerstein*, as well as the 48-hour presumptive reasonableness requirement of *County of Riverside*, both start with the premise that a process must exist for determining probable cause that a crime has been committed. *Gerstein v. Pugh*, 420 U.S. at 125; *County of Riverside v. McLaughlin*, 500 U.S. 44, 55 (1991).  The Court further warned in *County of Riverside* that even if a hearing were available within a 48 hour period–and it is not in this case—a probable cause determination may still violate the Fourth Amendment if it is delayed unreasonably, such as "for the purpose of gathering additional evidence to justify the arrest." *Id.* at 56.

LVDPS cannot rely on ICE immigration detainers or administrative warrants to fulfill its own obligations.  Over and over again, LVDPS argues that because the second detention arises out of an ICE detainer, it does not have to make PC determinations for immigration-related detainees. *See e.g.,* Defs.' Response at 15, 18.  The Fourth Amendment, however, requires "a prompt probable cause determination by a neutral and detached magistrate to justify detention beyond that which may be initially justified by any probable cause determination of removability." *Gonzalez v. ICE*, 975 F.3d 788, 824 (9th Cir. 2020).  In other words, ICE's representation in an immigration detainer or administrative warrant of a probable cause for removability does not absolve LVDPS of its probable cause obligations under the Fourth Amendment.  The Fourth Amendment requires review of immigration detainers by a detached and neutral official.  LVDPS has failed to institute a procedure that allows for such review.

### VI.     The City's Legal Interpretation of the Nature of ICE Detainers is Unreasonable.

ICE detainers are requests by the federal government, and they are not mandatory.  The language of the detainer itself states that immigration detainers are not mandatory.  The I-247 form that LVDPS receives from ICE states, "This detainer arises from DHS authorities and should not

1   impact decisions about the alien's bail, rehabilitation, parole, **release**, diversion, custody

2   classification, work, quarter assignments, or other matters." *See* I-274A in PX30 [Dkt. No. 72-31]

3   at 5-6 (emphasis added). This language indicates that law enforcement agencies must make their

4   own determinations and take responsibility for their decisions to hold individuals based on civil

5   detainers.

6         LVDPS attempts to excuse its failure to establish probable cause for immigration detainees

7   by arguing that even if such failure violates state law, such action does not violate the Fourth

8   Amendment. LVDPS mischaracterizes *Gonzalez v. ICE*, the case which it cites to for support of

9   this proposition. The court in *Gonzalez* clarified that a violation of the Fourth Amendment is

10  determined by whether the local law enforcement agency fulfilled its probable cause requirement,

11  and not on whether state law allows or prohibits such detention. *Gonzalez,* 975 F.3d at 817. Its

12  failure to establish probable cause for immigration detainees is what dooms LVDPS.

13

14  **VII.   Because LVDPS held Plaintiffs on Immigration Detainers without Probable**
15         **Cause, Plaintiffs were Falsely Imprisoned.**

16        Plaintiffs were detained beyond their release date and time without the opportunity for

17  release and without the opportunity for a neutral official to make a probable cause determination

18  supporting their detention. This detention beyond the scope of their initial arrest is a deprivation

19  of their liberty, without their consent and outside the bounds of law. *See Moen v. Las Vegas Intern.*

20  *Hotel, Inc.*, 90 Nev. 176, 521 P.2d 370 (1974); *see also Lerner Shops of Nev., Inc. v. Marin*, 83

21  Nev. 75, 78, 423 P.2d 398, 400 (1967); *Hernandez v. City of Reno*, 634 P.2d 668, 671 (Nev. 1981).

22  The undisputed facts show that LVDPS failed to establish probable cause to hold immigration

23  detainees beyond the scope of their initial detention. *See* Plaintiffs' Amended Motion for Summary

24  Judgment [Dkt. No. 72], PX11, Lopez-Jimenez Inmate File at 3; PX28 at 20, 34; PX30, Moya

25  Inmate File at 2. LVDPS intended to hold Plaintiffs beyond their release time, and it did so

26  wrongfully by relying on civil detainers for its authority. A warrant on a civil dispute does not

27

28

charge or allege a crime.  A department holding an individual on such a warrant, without verifying probable cause that a crime has been committed, is liable for false imprisonment.

Even if LVDPS were to argue that confinement based on immigration detainers were warrantless arrests, it did not meet the probable cause requirements of the Fourth Amendment. Here, the LVDPS did not have reasonable objective grounds to believe that any crime had been committed that would have justified the confinement.  The lack of legal process here, and LVDPS' refusal to establish such a process for establishing probable cause that a crime was committed amounts to false imprisonment.  Because there was no crime committed here, and the immigration detainers that LVDPS accepted do not mention any crimes committed, there is no possibility that probable cause existed sufficient for LVDPS to hold Plaintiffs and similar detainees beyond the scope of their initial detentions.  LVDPS's systematic violation of Plaintiffs' Fourth Amendment rights in the case of immigration detainers, therefore, amounts to false imprisonment.

## VIII.   Defendants Admit That They Deny Bail to Individuals with ICE Detainers and Therefore Deny Plaintiffs Due Process.

Defendants admit that they deny bail to all individuals with ICE detainers under their foreign national policy. *See* Defs.' Response at 16–17.  Defendants agree with Plaintiffs that "[h]ad Plaintiffs actually posted bail at any time while in LVDPS custody their release pursuant to that bail would have been processed, and the transfer of ICE would have been effectuated within 48 hours of that time pursuant to the detainer." *See id.* at 17.  In other words, Defendants agree with the facts underlying Plaintiffs' claim of denial of bail: that Defendants' policy and practice denies individuals with ICE detainers the ability to be released on bail.  *See* Plfs.' Mot. at 26–28. However, Defendants use these facts to conflate posting bail money but remaining in detention with being released upon posting of bail. *See* Defs.' Resp. at 17 ("A decision by Plaintiffs and their family to not post bail because the immigration detainer would thwart an immediate release is not 'denying bail.'").  Defendants refer here to their policy and practice of not releasing upon posting

1   of bail, but also to City Jail personnel telling families that even if they post bail for their family
2   members in detention, they would not be released if they had an ICE hold.  *See* Plfs.' Mot. at 7–8.

3          Defendants cite to *Gonzalez v. United States Immigr. & Customs Enf't* for arguments other
4   than bail in their brief, but ignore how the Ninth Circuit treated an argument that Defendants raise
5   here with regard to bail.  *See Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788
6   (9th Cir. 2020).  In that case, the Ninth Circuit recognized as an injury the failure to release the
7   plaintiff from custody who delayed posting bail because that plaintiff knew that the Los Angeles
8   Sheriff's Department's ICE detainer policy—similar to the one here—would have prevented the
9   plaintiff's release even if he posted the bail money related to his state criminal charges.  *See*
10   *Gonzalez*, 975 F.3d at 804–05 (plaintiff "faced the ongoing injury of continued detention in LASD
11   custody on the state criminal charges by virtue of the detainer that prevented him from posting bail
12   although he was eligible to do so").  It is erroneous for Defendants to argue that they are blameless
13   in their policy and practice of denying bail to individuals with ICE detainers simply because those
14   individuals *could have* posted the bail money if eligible.
15
16          Contrary to Defendants' arguments regarding due process, Plaintiffs do not just rely on
17   *Rivas v. Martin* for their claim that Defendants' policy and practice of denying bail to all individuals
18   with an ICE detainer deprives those individuals of due process.  *See* Defs.' Response at 17–18
19   (citing *Rivas v. Martin*, 781 F. Supp. 2d 775, 781 (N.D. Ind. 2011).  Plaintiffs also cite to other
20   cases that support Plaintiffs' theory and that deal with the categorical denial of bail—meaning,
21   actual release from detention upon payment of bail—to individuals in a jail.  *See* Plfs.' Mot. at 24
22   –26  (citing *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 780 (9th Cir. 2014); *Ilae v. Tenn*, 2013 WL
23   4499386, at *8 (D. Haw. Aug. 20, 2013)).  Furthermore, Defendants' reliance on *Rivas* for the
24   proposition that detentions under 48 hours are lawful is misplaced because Defendants categorically
25   denied release to Plaintiffs and others whether or not they posted bail, and then transferred them to
26
27
28

---

ICE custody. As described in this brief and Plaintiffs' motion with regard to *Gerstein*, Defendants never released and never intended to release Plaintiffs—and many other individuals with ICE detainers—from City Jail.

Moreover, Defendants' policy and practice has still not ended, and Defendants continued to hold individuals with ICE detainers past their release times well into 2020. *See* Defs.' Response at 18. Officers and personnel from LVDPS testified that the policy has not been changed in DPS's internal policy tracking system. *See* Plfs.' Mot. at 10. Defendants claims that the practice was stopped by Bananto Smith's October 2019 memorandum, but DPS's 30(b)(6) designee Robert Straube testified that he does not know how such practice was communicated to personnel working in the City Jail or how such personnel are trained on the issue. *See id*. Finally, even if Defendants currently do not detain individuals with ICE detainers beyond their release times, Defendants' internal communications indicate that the policy could be reinstated fully in practice once again depending on Defendants' interpretation of rulings by federal courts. *See id*. (citing PX29) ("[t]his is fluid, but until that California case [*Gonzalez v. United States Immigration and Customs Enf't*] is appealed and ruled on the city is basically on notice."). The Ninth Circuit reversed part of that district court decision that Defendants cited in Smith's memorandum, and Defendants cite to it in their response. *See* Defs.' Response at 12 (citing *Gonzalez*, 975 F.3d at 817–18). Therefore, Plaintiffs have reason to fear that Defendants could rescind the Smith memorandum and continue the detainer policy.

## IX.    Plaintiff Arriba Las Vegas Workers Center Has Standing.

Plaintiff Arriba Las Vegas Workers Center's ("Plaintiff Arriba") has standing in its own right: Defendants' policy and practice "perceptibly impaired" Arriba's ability to perform the services that it was formed to provide and did not manufacture such impairment. *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021) (internal citation omitted).

Organizational standing may be based on assertion of rights on behalf of an organization's members, or in an organization's "own right." *Id*. at 662 (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).  An association "cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all[, but] would have suffered some other injury if it had not diverted resources to counteracting the problem." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010).  Defendants ignore this reality as well as Ninth Circuit precedents on standing.

Defendants do not dispute that Plaintiff Arriba has diverted resources such as staff time to addressing the practice of holding individuals with ICE detainers in City Jail and funds to assisting individuals or family members of individuals who have been detained. *See* Plfs.' Mot. at 12–13. Defendants question whether Plaintiff Arriba's establishment of a fund to help individuals pay their immigration bond was a "decision to stray from its original mission of helping workers with workplace issues." *See* Defs.' Resp. at 22. Defendants ignore, however, why Arriba diverted staff time and funds to assisting detained individuals and their families.  Defendants ignore the uncontested evidence that the "harmful impacts of the policies of [Defendants] have sweeping implications for the immigrant community in Las Vegas, as well as the membership base of our organization." *See* PX08 (Dkt. 72-9) ¶¶ 15–6.

One important reason for diversion of funds to the bond fund was that Defendants' policies and practice caused Arriba's members, who are critical to the "priorities and work of" Arriba, or members' relatives to be detained and then transferred to ICE custody. *See* PX08 (Dkt. 72-9) ¶¶ 5, 8, 12–14; Ex. C to Defs.' Response, [Dkt. No. 78-3] Bliss Requa-Trautz Dep. Tr. 32:10-37:15, 39:22-41:12.  Defendants do not contest these facts.  Therefore, besides frustrating Arriba's missions of assisting members and the immigrant community of Las Vegas with workers' rights

issues, Defendants' policies and practices disrupt Plaintiff Arriba's ability to function and make decisions as an organization by causing its members and board members to be in danger of detention by ICE.  Had Arriba not diverted its financial resources to a fund that assists its members with immigration bond costs, it "would have suffered some other injury," such as being less able to function.  *See La Asociacion* , 624 F.3d at 1088 ; *see also We Are Am./Somos Am., Coal. of Arizona v. Maricopa Cty. Bd. of Supervisors*, 809 F. Supp. 2d 1084, 1099-1100 (D. Ariz. 2011) (no manufacture of harm by organization assisting migrants with services and cash who were detained due to county policy that made assistance more expensive than for like undetained migrants).

Defendants also cannot dismiss the time and resources Plaintiff Arriba's staff spent helping Plaintiffs Moya-Garay and Lopez-Jimenez and their family members by arguing that Arriba was unaffiliated with individual Plaintiffs at the time of their harms.  *See* Defs.' Response at 23.  As Plaintiffs have shown, Defendants' policy and practice started before and continued well after individual Plaintiffs' detention, and as Defendants show, Plaintiffs became involved as members with Plaintiff Arriba immediately after their detentions.  *See* Defs.' Response at 20–21.  Moreover, the frustration of Plaintiff Arriba's mission goes beyond helping only the individual Plaintiffs.  The frustration applies to the effects of Defendants' conduct on the broader immigrant community and membership base of Arriba in Las Vegas because, if more immigrants are detained by Defendants and transferred to ICE detention, Arriba cannot help those immigrants with workers' rights issues. *See E. Bay Sanctuary Covenant*, 993 F.3d at 663 (mission frustrated where challenged policy caused most asylum-seekers [to] "remain detained in detention facilities near the border hundreds of miles away" from asylum assistance organization) (internal quotation marks omitted). Because Defendants' policy and practice "frustrated its mission and caused it to divert resources in response to that frustration of purpose," Plaintiff Arriba has standing in its own right as an organization. *See E. Bay Sanctuary Covenant*, 993 F.3d at 663 (citing *Fair Hous. of Marin v. Combs*, 285 F.3d 899,

905 (9th Cir. 2002)).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant summary judgment on their Fourth Amendment claims, Fourteenth Amendment claims, and false imprisonment claims, and grant the appropriate declaratory and injunctive relief.

Dated: March 21, 2022                          Respectfully submitted,

MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND

By: /s/ Ernest Herrera
Ernest Herrera
Leticia Saucedo
Luis Lozada
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
634 S. Spring St., 11th floor
Los Angeles, CA 90014
Telephone:  (213) 629-2512
Facsimile:  (213) 629-0266

F. Travis Buchanan, Esq.
NV Bar No. 9371
The Cochran Firm – Las Vegas
701 E. Bridger, Suite 540
Las Vegas, NV 89101
Telephone:  (702) 331-5478
Facsimile:  (702) 629-6919

*Attorneys for Plaintiffs*

1

## **<u>CERTIFICATE OF SERVICE</u>**

2          I, the undersigned, hereby certify that service of the foregoing Plaintiffs' Reply in Support

3  of Motion for Summary Judgment was made on this 21st day of March 2022, by electronic mail

4  upon all counsel of record.

5

Dated: March 21, 2022

6

7                                              */s/ Ernest Herrera*
                                                Ernest Herrera

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28