1

2

UNITED STATES DISTRICT COURT

3

DISTRICT OF NEVADA

4

5    ALICIA INES MOYA GARAY, *et al.*,          Case No. 2:20-cv-119-ART-EJY

6                                 Plaintiffs,   ORDER PARTIALLY GRANTING
                                                FEDERAL DEFENDANTS' MOTION
7        v.                                     TO DISMISS (ECF NO. 114)

8    CITY OF LAS VEGAS, *et al.*,

9                                 Defendants.

10       Before the Court are Federal Defendants' motion for judicial notice (ECF

11   No. 127), which asks the Court to take notice of a particular policy by City

12   Defendants, and their Motion to Dismiss (ECF No. 114), which seeks dismissal of

13   portions of Plaintiffs' Third Amended Complaint (ECF No. 98). For the reasons

14   explained below, the Court grants the motion for judicial notice and grants in

15   part and denies in part the motion to dismiss.

16       **I.    BACKGROUND**

17       This ruling assumes familiarity with the facts, as previously referenced in

18   the court's order on city defendants' motion for summary judgment (ECF No. 96).

19   This action arises from the detention and transfer to U.S. Immigration and

20   Customs Enforcement ("ICE") custody of plaintiffs Moya and Lopez-Jimenez after

21   they were lawfully arrested and detained by the Las Vegas Department of Public

22   Safety (LVDPS). Plaintiffs Moya, Lopez-Jimenez, and Arriba Las Vegas Worker

23   Center ("Arriba") initially sued City Defendants. (ECF No. 44.) After the court

24   found that ICE was a necessary party (ECF No. 96), Plaintiffs filed their Third

25   Amended Complaint (ECF No. 98), alleging four claims, including three against

26   Federal Defendants: (1) unlawful seizure in violation of the Fourth Amendment

27   (against all defendants); (2) unlawful denial of bail in violation of the Fourteenth

28   Amendment's Due Process Clause (against all defendants); (3) false imprisonment

in violation of Nevada law (against City Defendants); and (4) *ultra vires* issuance of immigration detainers in violation of statutory authority (against Federal Defendants). (ECF No. 98 at ¶¶ 70-97.) Plaintiffs seek damages, as well as injunctive and declaratory relief.

## II.   DISCUSSION

Federal Defendants challenge Plaintiffs' complaint based on their standing to seek injunctive relief and the sufficiency of their allegations under each claim. Specifically, Federal Defendants argue that (1) Plaintiffs lack standing to seek injunctive relief because they are likely to suffer future injury; (2) Plaintiffs' Fourth Amendment rights were not violated because they were held less than 48 hours in City custody; (3) Plaintiffs have not alleged that Federal Defendants were involved in any Due Process violations; and (4) ICE's issuance of detainers is not *ultra vires* because it is permitted under 8 U.S.C. §§ 1103, 1226, and 1357(d). The Court addresses each of these issues below.

### A. STANDING

ICE seeks dismissal of all claims against it on the grounds that Plaintiffs lack standing to pursue prospective injunctive and declaratory relief, which is the only relief they request from Federal Defendants. (*See* ECF No. 117 at 9.) A plaintiff seeking relief in federal court must demonstrate that she has standing to bring her claim. U.S. Const. art. III § 2; *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 475–76 (1982). The burden is on "the party who seeks the exercise of jurisdiction in his favor clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *United States v. Hays*, 515 U.S. 737, 743 (1995) (internal quotations omitted). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the

defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

ICE bases its standing argument on *City of Los Angeles v. Lyons*, which holds that a plaintiff seeking injunctive or declaratory relief must show that he is "likely to suffer future injury." *Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983); *see also O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) (holding that a plaintiff seeking injunctive relief must demonstrate "likelihood of substantial and immediate irreparable injury"). In *Lyons*, the Supreme Court held that the plaintiff, whom police had previously placed in a dangerous chokehold, could not seek an injunction barring the use of that chokehold in future arrests because he could not prove that he was likely to be choked again. To seek injunctive relief for a prospective future injury, the Court held, the threat of injury must be "real and immediate," not "conjectural" or "hypothetical." *Lyons*, 461 U.S. at 102.

Federal Defendants also argue that Plaintiffs' claim for injunctive relief is foreclosed by the City's policy of not honoring ICE detainers, but this appears to be a disputed issue of fact. (ECF No. 114 at 12.) The City of Las Vegas published a tweet on October 24, 2019, stating that it would no longer honor ICE immigration detainers, but Plaintiffs dispute this fact. (ECF No. 98 at ¶ 65.) After oral argument, Federal Defendants moved to judicially notice the City's Department of Public Safety policy (COR-5962) on "Arrest and Detention of Foreign Nationals." (ECF No. 127-1.) That policy appears to indicate that the City does honor ICE detainers. (*Id.* at 3-4.) The policy also provides that the City will not "detain a Foreign National beyond the state and time the Foreign National would otherwise be released notwithstanding the ICE Detainer." Plaintiffs do not deny the existence of this policy but argue that it is premature to resolve its import relative to their claims. (ECF No. 129 at 2-3.) The Court agrees. It acknowledges that the policy appears to confirm Plaintiffs' allegation that the City

honors ICE detainers but draws no inferences about how the policy has been implemented.

As to Defendants' *Lyons* argument, plaintiffs Moya and Lopez-Jimenez lack standing because the Third Amended Complaint fails to allege a threat of injury to them that is sufficiently real or immediate. Plaintiffs' Fourth Amendment and Due Process claims challenge post-arrest procedures by City and Federal Defendants related to the issuance of immigration detainers and the elongation of their detention in City custody. Moya and Lopez-Jimenez allege that they were lawfully arrested by local authorities for criminal offenses, interviewed by ICE agents, and detained longer than necessary based on an ICE detainer. (ECF No. 98 at 6-9.) To be subject to additional detainers and detention, Moya and Lopez-Jimenez would need to be arrested and detained again by City Defendants. Plaintiffs have not demonstrated that such an outcome is likely to occur. *See also Spencer v. Kemna*, 523 U.S. 1, 15 (2003) (quoting *O'Shea*, 414 U.S. at 497) (standing can generally not be shown through assertions that plaintiffs "will be prosecuted for violating valid criminal laws.").

Plaintiffs' reliance on *Nordstrom v. Ryan* is unhelpful. 762 F.3d 903, 911 (9th Cir. 2014) (stating that threat of future injury can be shown through written policy, if "the defendant had, at the time of injury, a written policy, and that the injury stems from that policy."). Plaintiffs argue that Moya and Lopez-Jimenez face threats of future injury because City Defendants have a written policy of honoring ICE detainers. But *Nordstrom* does not help Plaintiffs overcome their *Lyons* problem. In *Nordstrom*, the challenged policy was a rule requiring prison officials to read inmates' outgoing mail—conduct that, by its nature, was likely to recur. *Id.* Here, as discussed above, neither the written policy nor other facts make it likely that Moya and Lopez-Jimenez will again be arrested and subject to ICE detainers.

1      Further, unlike in *Nordstrom*, none of the written policies before the Court
2 authorize the harms of which Plaintiffs complain, namely prolonged detention in
3 the City jail based on an ICE detainer.

4      On the other hand, Arriba, the organizational plaintiff, has standing to
5 pursue its claims for injunctive and declaratory relief. Organizations can assert
6 standing on behalf of their own members, *see Friends of the Earth, Inc. v. Laidlaw*
7 *Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000), or on behalf of themselves,
8 *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982). To establish direct
9 standing, an organization must demonstrate that a defendant's complained-of
10 behavior has (1) frustrated its mission and (2) caused it to divert resources in
11 response to that frustration. *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640,
12 663 (9th Cir. 2021); *La Asociacion de Trabajadores de Lake Forest v. City of Lake*
13 *Forest*, 624 F.3d 1083 (9th Cir. 2010). "Organizations are not required to
14 demonstrate some threshold magnitude of their injuries; one less client that they
15 may have had but-for the [challenged action] is enough." *E. Bay Sanctuary*
16 *Covenant*, 993 F.3d at 664.

17      Plaintiffs allege that Arriba is "a grassroots organization" that represents
18 "day laborers, domestic workers, and other low-wage and migrant workers" in the
19 Las Vegas area. (ECF No. 98 at ¶ 7.) Its stated mission is "to develop, educate,
20 and empower worker and migrant communities to take action to defend their
21 rights as workers and migrants." (*Id.* at ¶ 7.) Arriba alleges that Federal
22 Defendants' immigration detainer program interferes with this mission by placing
23 many of its members at risk of deportation, forcing Arriba to move funds away
24 from traditional programs and towards education, training, direct support, and
25 bond funds for at-risk members and their families. (*Id.* at ¶¶ 60-62, 77.) It further
26 alleges that it has had to divert funds and resources, including staff time, towards
27 filing public records requests, tracking city and federal action, and "address[ing]
28 ICE detainers in Las Vegas city and county jails." (*Id.* at ¶ 61.) Arriba has alleged

a likelihood of future injury because there is a significant likelihood that one or more of its members, or its members' families, will face harms related to ICE's immigration detainer practice in the future.

Accepting Plaintiffs' allegations as true, they have alleged facts sufficient to demonstrate Arriba's standing. *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (in response to a facial attack on federal jurisdiction under 12(b)(1), courts must ask "whether the complaint alleges sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). Specifically, Plaintiffs allege that the City continues to honor ICE detainers (which the 2023 DPS policy appears to confirm) and has detained at least five individuals past their scheduled release date in 2019, before the change in policy. (ECF No. 98 at ¶¶ 67-69.) Faithfully implemented, the 2023 DPS policy could foreclose one aspect of Arriba's claim for injunctive relief, insofar as it promises that foreign nationals will not be detained by the City after their release date, but at this early stage and based on the Third Amended Complaint, it is too soon to say.

Accordingly, the Court finds that Plaintiffs Moya and Lopez-Jimenez lack standing to sue Federal Defendants for injunctive or declaratory relief and Plaintiff Arriba has standing to seek such relief.

### B. Failure to State a Claim: Fourth Amendment

Federal Defendants argue that Plaintiffs cannot state a Fourth Amendment claim primarily because Plaintiffs have not alleged that Arriba's members have been detained based on an ICE detainer for more than 48 hours after their scheduled release from the City Jail. Plaintiffs agree that their complaint does not allege excess detention longer than 48 hours. They argue that their Fourth Amendment claim against Federal Defendants turns not on the length of detention but instead on the constitutional adequacy of the probable cause determination. Moya and Lopez-Jimenez were lawfully arrested by local authorities for criminal offenses, interviewed by ICE agents, detained by the city

based on an ICE detainer, and held for roughly 24 (Moya) and 10 (Lopez-Jimenez) hours longer than their city sentences required. (ECF No. 98 at ¶¶ 38, 53.) Plaintiffs assert that the Fourth Amendment rights of Arriba's members were violated because Federal Defendants failed to provide them with a prompt determination of probable cause either before or promptly after ICE took them into custody. (ECF 117 at 16, citing ECF No. 98 at ¶¶ 40, 55.) They further allege that this has frustrated Arriba's mission and caused it to divert funds in response to that frustration. (ECF No. 98 at ¶¶ 60-61, 77.)

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Under this standard a district court must accept as true all well-pleaded factual allegations in the complaint and determine whether those factual allegations state a plausible claim for relief. *Id.* at 678-79.

Federal Defendants allege that Plaintiffs cannot state a Fourth Amendment claim because Moya and Lopez-Jimenez were released to ICE custody less than 48 hours after their City detention ended. (ECF No. 114 at 6-8.) *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975), requires a judicial determination of probable cause before or promptly after arrest. The 48-hour rule comes from *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991), which established that "judicial

determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." The Ninth Circuit has held that *Gerstein* applies to ICE detention. *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 824 (9th Cir. 2020).

Plaintiffs argue that the 48-hour rule is not dispositive if, as they assert, there is no constitutionally adequate probable cause determination before or after an individual is taken into ICE custody. Plaintiffs argue that a probable cause determination within 48 hours may violate *Gerstein* if it was "delayed unreasonably." (ECF 117 at 14 (citing *County of Riverside*, 500 U.S. at 56 (noting that an unreasonable delay would include delaying a probable cause determination for the purpose of gathering additional evidence to justify the arrest)).) Plaintiffs further argue that the 48-hour rule is irrelevant because ICE does not have procedures in place for a prompt probable cause determination by a judicial officer after individuals are taken into ICE custody. (ECF 117 at 16.)

If true, Plaintiffs' allegations plausibly state a Fourth Amendment violation. The Ninth Circuit held in *Gonzalez* that *Gerstein* and its progeny apply to immigration detention. *See Gonzalez,* 975 F.3d at 824. Though *Gonzalez* involved a class of individuals who had been detained based on an ICE detainer longer than 48 hours, the court acknowledged that the 48-hour rule is not dispositive of the Fourth Amendment issue but changes the calculus in terms of who (the Government or the individual) bears the burden of proof. *Id.* (observing that after 48 hours, the government bears the burden if justifying detention based on "a bona fide emergency or other extraordinary circumstance"). The court in *Gonzalez* implicitly acknowledged, without resolving, the argument that Plaintiffs make here, namely that *Gerstein* requires a probable cause determination by a "sufficiently detached and neutral executive official, such as an immigration judge." *Gonzalez,* 975 F.3d at 825. The court in *Gonzalez* also noted that remand was "especially appropriate" because the Government had changed its

immigration detainer policy to require the issuance of an administrative warrant alongside any immigration detainer. *Id.* at 826 n.27. Here, neither party is certain whether the detainers were accompanied by administrative warrants or whether ICE currently has a policy of issuing warrants alongside detainers in all cases. (Feb. 29, 2024, Hearing.) At minimum, *Gonzalez* supports the plausibility of Plaintiffs' theory that the probable cause determination made by ICE officials before or promptly after arrest was constitutionally inadequate. (ECF No. 98 at ¶ 26, 40, 55.)

Accordingly, Plaintiffs' state a plausible Fourth Amendment violation.

### C. Failure to State a Claim: Due Process

Plaintiffs' Due Process challenge turns on City Defendants' alleged refusal to grant bail to individuals who are subject to immigration detainers. (ECF No. 98 at ¶¶ 84-87.) Specifically, Plaintiffs allege that City Defendants' practice of postponing bail determinations for individuals subject to immigration detainers is a discriminatory administration of bail, in violation of their Due Process rights under the Fourteenth Amendment. *See Kelly v. Springett*, 527 F.2d 1090, 1093 (9th Cir. 1975) (individuals have "a Fourteenth Amendment due process right to have a state's bail system administered without caprice or discrimination."). Because this claim fails to allege any facts implicating Federal Defendants, it is dismissed without prejudice and with leave to amend.

### D. Ultra Vires

Federal Defendants seek dismissal of Plaintiffs' *ultra vires* claim, which argues that the detainers at issue were unlawful because ICE lacks authority to issue detainers for offenses unrelated to controlled substances. (ECF 117 at 17-24 (citing 8 U.S.C. § 1357(d)).) Plaintiffs argue that the statutory source of ICE's detainer authority is § 1357(d), which only authorizes detainers for aliens charged with controlled substance offenses, and reason that the implementing regulation, 8 C.F.R. § 287.7, cannot expand the scope of § 1357(d). *See* 8 U.S.C.

§ 1357(d) (granting ICE the authority to issue immigration detainers "in the case of an alien who is arrested . . . for a violation of any law relating to controlled substances."). Federal Defendants counter that ICE's detainer authority is broader and anchored by other statutes, including 8 U.S.C. § 1226, and that § 287.7 is a reasonable regulation that should be accorded *Chevron* deference. (ECF No. 120 at 8-11.)

The Court finds that dismissal of Plaintiffs' *ultra vires* claim is inappropriate at this stage because factual development of the record and additional briefing would be helpful in resolving this claim. The Court in *Gonzalez,* which analyzed detainers in the context of resolving a question about the availability of injunctive relief, recognized that detainers are authorized by § 1357(d), not § 1226. *See Gonzalez*, 975 F.3d at 815 (citing 8 U.S.C. § 1226(a) and (c) which authorize the Attorney General to arrest and detain aliens on a warrant but do not mention detainers). Whether ICE issues detainers with administrative warrants is a factual issue that cannot be resolved here and could inform the analysis of the validity of the detainers. *Gonzalez,* 975 F.3d at 825 (recognizing that immigration detainers are different from administrative warrants). Federal Defendants for the first time at oral argument argued that 8 U.S.C. § 1103 authorizes detainers. The court in *Gonzalez* expressly declined to address whether the detainer regulation (§ 287.7) is valid under 8 U.S.C. § 1103, which broadly authorizes DHS "to promulgat[e] regulations to carry out the provisions of the INA." *Gonzalez*, 975 F.3d at 815 n.16 (citing *Comm. for Immigrant Rights of Sonoma Cty. v. Cty. of Sonoma*, 644 F. Supp. 2d 1177, 1199 (N.D. Cal. 2009)). Because this argument has not been briefed by either side, the Court declines to consider it.

### III.   CONCLUSION

It is therefore ordered that Federal Defendants' Motion to Dismiss (ECF No. 114) Plaintiffs' Third Amended Complaint (ECF No. 98) is granted in part and denied in part, as outlined above. Plaintiff Arriba may continue to pursue its

Fourth Amendment and *ultra vires* claims against Federal Defendants, and it may continue to seek prospective injunctive and declaratory relief on those claims. This order shall not affect Plaintiffs' claims against the City Defendants.

It is further ordered that Federal Defendants' Motion to Take Judicial Notice (ECF No. 127) is granted.

Dated this 27th day of March 2024.


_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE