UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ALICIA INES MOYA GARAY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LAS VEGAS, *et al.*,<br><br>Defendants. | Case No. 2:20-cv-119-ART-EJY<br><br>ORDER |

Plaintiffs Alicia Ines Moya Garay, Juan Jaime Lopez-Jimenez, and Arriba Las Vegas Worker Center ("Arriba") bring this civil rights action against the City of Las Vegas, Jason Potts, Bananto Smith, and Danielle Davis ("City Defendants") and United States Immigration and Customs Enforcement ("ICE"), Tae D. Johnson, and Michael Bernacke ("Federal Defendants"). Plaintiffs challenge Defendants' practice of detaining individuals in the City of Las Vegas jail beyond the time they would ordinarily be released based upon immigration detainers. Before the Court is Federal Defendants' motion to dismiss (ECF No. 147), which seeks dismissal of all claims against them in Plaintiffs' fourth amended complaint (ECF No. 144). For the reasons explained below, the Court denies the motion.

I. **BACKGROUND**

This ruling assumes familiarity with the facts, as referenced in the Court's order on Federal Defendants' previous motion to dismiss (ECF No. 131) and the Court's order on City Defendants' motion for summary judgment (ECF No. 96).

This action arises from the detention and transfer to ICE custody of Moya and Lopez-Jimenez after they were arrested and detained by the Las Vegas Department of Public Safety. Plaintiffs Moya, Lopez-Jimenez, and Arriba initially sued City Defendants. (ECF No. 44.) After the Court found that ICE was a

1

necessary party (ECF No. 96), Plaintiffs filed their third amended complaint (ECF No. 98), alleging four claims, including three against Federal Defendants: (1) unlawful seizure in violation of the Fourth Amendment (against all defendants); (2) unlawful denial of bail in violation of the Fourteenth Amendment's Due Process Clause (against all defendants); (3) false imprisonment in violation of Nevada law (against City Defendants); and (4) *ultra vires* issuance of immigration detainers in violation of statutory authority (against Federal Defendants). Federal Defendants moved to dismiss all claims against them (ECF No. 114). The Court granted in part and denied in part that motion (ECF No. 131). In their fourth amended complaint (ECF No. 144), Plaintiffs allege the same four claims. Federal Defendants again move to dismiss (ECF No. 149-1).[1]

## II.   DISCUSSION

Federal Defendants challenge Plaintiffs' complaint based on their standing to seek injunctive relief and the sufficiency of their allegations under each claim. Specifically, Federal Defendants argue that (1) Arriba lacks standing to seek injunctive relief because it has not sufficiently alleged injury-in-fact and because the standard for organizational standard has changed since the Court's order on Federal Defendants' prior motion to dismiss; (2) Plaintiffs failed to allege new facts related to their previously dismissed second cause of action; (3) Plaintiffs' third cause of action does not allege facts against ICE; and (4) ICE's issuance of detainers is not *ultra vires* because it is permitted under 8 U.S.C. §§ 1103, 1226, and 1357(d). (ECF No. 149-1.) The Court addresses each argument in turn.

---

[1] The Court notes that neither Federal Defendants' original motion to dismiss (ECF No. 147) nor their corrected motion to dismiss (ECF No. 49-1) were filed in accordance with Local Rule IA 10-1, which requires that all lines of text be numbered. LR IA 10-1(a)(1). The Court reminds Federal Defendants that the Court may strike any document that does not conform to an applicable provision of these rules. LR IA 10-1(d).

### A. Standing

Federal Defendants seeks dismissal of all claims against them on the grounds that Arriba lacks organizational standing to pursue prospective injunctive and declaratory relief, which is the only relief they request from Federal Defendants.[2]

To establish Article III standing, a plaintiff must demonstrate that: (1) she suffered an injury in fact that is concrete, particularized, and actual or imminent (not conjectural or hypothetical); (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). A plaintiff's standing is assessed as of the time the plaintiff filed the complaint. *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1036 (9th Cir. 2008).

"[O]rganizations are entitled to sue on their own behalf for injuries they have sustained." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19 (1982). Like an individual, an organization must establish injury in fact, causation, and redressability. *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). An organization may satisfy standing by alleging that a defendant's actions "affected and interfered with [a plaintiff's] core business activities—not dissimilar to a retailer who sues a manufacturer for selling defective goods to the retailer." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024). An organization may not establish standing simply based on a special interest in the government's conduct, "no matter how longstanding the interest and no matter how qualified the organization." *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972). A plaintiff must show "far more than

---

[2] Federal Defendants argue that Plaintiffs are not entitled to monetary damages, but Plaintiffs do not seek monetary damages against Federal Defendants. (ECF No. 153 at 7 n.2; ECF No. 144 at ¶¶ 76–106.)

simply a setback to the organization's abstract social interests." *Havens*, 455 U.S. at 379.

Federal Defendants argue that Arriba lacks standing because two recent decisions, *Hippocratic Medicine*, 602 U.S. 367 and *Arizona Alliance for Retired Americans*, 117 F.4th 1165 (9th Cir. 2024), narrowed organizational standing. (ECF No. 149-1 at 12–17.) *Arizona* has since been vacated by the Ninth Circuit on grant of rehearing en banc and therefore this Court cannot consider it. *See, e.g., Immigrant Defs. L. Ctr. v. Noem,* No. CV 20-9893 JGB (SHKX), 2025 WL 1172442, at *8 (C.D. Cal. Apr. 16, 2025). At oral argument, Federal Defendants argued that *Hippocratic Medicine* still forecloses a finding that Arriba has organizational standing.

The Court previously found that Arriba demonstrated standing. (ECF No. 131 at 2–6.) In doing so, the Court relied on *Havens*, 455 U.S. 363, *Friends of the Earth*, 528 U.S. 167, *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021), and *La Asociacion de Trabajadores*, 624 F.3d 1083. (*Id.*) The Court found that Arriba had alleged "a significant likelihood that one or more of its members, or its members' families, will face harms related to ICE's immigration detainer practice in the future." (*Id.* at 6.) Specifically, Arriba alleged that the City of Las Vegas continues to honor ICE detainers and has detained at least five individuals past their scheduled release date. (*Id.*)

Defendants argue that, under *Hippocratic Medicine*, Arriba must show that the challenged action directly injures the organization's "pre-existing core activities and does so *apart* from the plaintiffs' response to that governmental action." (ECF No. 154 at 4 (quoting *Arizona*, 117 F.4th at 1165). Their argument relies almost exclusively on *Arizona*'s interpretation of *Hippocratic Medicine,* which this Court may not rely upon. *Hippocratic Medicine* does not use the term "pre-existing." *See* 602 U.S. 367. Nonetheless, the Court will consider whether Arriba has organizational standing under *Hippocratic Medicine*.

In *Hippocratic Medicine,* medical associations that opposed the Food and Drug Administration's approval of mifepristone, an abortion-inducing drug, could not establish organizational standing either "simply because they object to FDA's actions" or by "spend[ing] [their] way into standing simply by expending money to gather information and advocate against the defendant's action." 602 U.S. at 394. The medical associations had alleged that FDA's actions had "'caused' the associations to conduct their own studies about mifepristone" to inform their members about the drug and "'forced' the associations to 'expend considerable time, energy, and resources' drafting citizen petitions to the FDA." *Id.* The Court distinguished those allegations from the facts in *Havens*, where a housing counseling organization had standing to bring a Fair Housing Act claim against a realty corporation. *Id.* The Court found two critical differences: the organization in *Havens* was "not only an issue-advocacy organization, but also operated a housing counseling service" and the defendant's actions in *Havens* "directly affected and interfered with [the organization's] core business activities." *Id.*

The Court agrees with Plaintiffs that the facts alleged here are more analogous to those in *Havens* than those in *Hippocratic Medicine.* Unlike the FDA regulations at issue in *Hippocratic Medicine*, Arriba alleges that Federal Defendants' practices directly affect and interfere with Arriba's core activities, which include assisting migrant workers. (ECF No. 144 at ¶¶ 59–64.) Like the organization in *Havens*, Arriba is not merely an issue-advocacy organization but operates training and assistance programs for workers and migrants. (*Id.* at ¶ 59.) As a grassroots organization, Arriba "relies on active involvement from workers and other allies within the community. (*Id.* at ¶ 60.) When those members are detained as a result of Federal Defendants' actions, Arriba has to divert its resources away from its traditional programs towards helping its members get out of immigration detention. (*Id.* at ¶¶ 61–62.) Unlike the medical

associations in *Hippocratic Medicine*, Arriba is not merely spending its way into standing.

Defendants also argue that Arriba lacks standing because a 2023 policy written policy issued by the City of Las Vegas Department of Public Safety states that the City does not honor ICE detainers. (ECF No. 149-1 at 14.) The Court previously addressed and rejected this argument, explaining that, if faithfully implemented, that policy could foreclose injunctive relief, but that it was too early to make that determination. (ECF No. 131 at 6.)

Accordingly, Arriba has organizational standing to sue Federal Defendants for injunctive or declaratory relief.

### B. Second Cause of Action: Due Process

Federal Defendants briefly argue that Plaintiffs' due process claim against Federal Defendants should be dismissed because it "asserts no facts relating to Federal Defendants and seeks monetary damages that are statutorily barred." (ECF No. 149-1 at 4.) The Court previously dismissed this claim against Federal Defendants without prejudice because it failed to allege any facts implicating Federal Defendants. (ECF No. 131 at 9.) In their Fourth Amended Complaint, Plaintiffs added allegations implicating Federal Defendants: Plaintiffs allege that "City Defendants refused to allow Plaintiffs to post bail despite their eligibility because of ICE detainers, and *upon direction from ICE*, City Defendants held Plaintiffs until they were released into ICE custody." (ECF No. 144 at ¶ 93 (emphasis added).) Plaintiffs allege that "City Defendants' and Federal Defendants' unlawful conduct therefore should be enjoined" and request a declaratory judgment that Defendants' conduct is unlawful and unconstitutional. (*Id.* at ¶ 94.) Plaintiffs do not seek money damages for this cause of action.

The Court therefore declines to dismiss Plaintiffs' second cause of action against Federal Defendants.

### C. Third Cause of Action: False Imprisonment

Federal Defendants also seek dismissal of Plaintiffs' third cause of action against them. (ECF No. 149-1 at 4.) At oral argument, Plaintiffs confirmed that they are bringing this state law cause of action only against City Defendants and that the inclusion of Federal Defendants in the fourth amended complaint was in error. This claim is therefore dismissed against Federal Defendants.

### D. Fourth Cause of Action: *Ultra Vires* Claim

Federal Defendants argue, again, that Plaintiffs' *ultra vires* claim should be dismissed under Rule 12(b)(6). (ECF No. 149-1 at 4–5, 17–23.) The Court previously found that dismissal was inappropriate at this stage of litigation because factual development of the record and additional briefing would be helpful in resolving the claim. (ECF No. 131 at 10.)

Federal Defendants repeat the same arguments in this motion that were made in the prior motion to dismiss. (*See* ECF No. 114 at 17–22; ECF No. 149-1 at 17–23.) The Court previously rejected those arguments and allowed this claim to proceed. (ECF No. 131 at 9–10.) Defendants have not moved to reconsider that decision and the Court declines to construe their motion as such. *See* LR 59-1(b)(providing that motions for reconsideration are disfavored, must be filed within a reasonable time, and must not repeat arguments unless necessary to explain controlling, intervening law or to argue new facts). To the extent that intervening law, including the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025); 8 U.S.C. § 1226(c)(1)(E), may impact Plaintiffs' *ultra vires* claim, those arguments are better presented in the context of a motion for summary judgment.

The Court therefore declines to dismiss Plaintiffs' fourth cause of action.

//
//
//
//

### III. CONCLUSION

It is therefore ordered that Federal Defendants' Motion to Dismiss Plaintiffs' Fourth Amended Complaint (ECF No. 147) is DENIED.

This order does not affect Plaintiffs' claims against City Defendants.

DATED: June 13, 2025

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE